**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 26-cv-23083**

SHARKNINJA OPERATING LLC, and
SHARKNINJA SALES COMPANY,

      Plaintiffs,

                                              **JURY TRIAL DEMANDED**

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

      Defendants.

_____/

**COMPLAINT**

Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja" or "Plaintiffs"), by and through undersigned counsel, hereby sue Defendants, the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A (collectively, "Defendants"). *See* Exhibit 1. Defendants are promoting, selling, offering for sale, and importing goods into the United States that infringe SharkNinja's Asserted Patent (defined below), within this Judicial District, through various Internet based e-commerce stores using the seller identities set forth on Schedule A (the "Seller IDs"). SharkNinja alleges as follows:

**NATURE OF THE ACTION**

1.       This is an action for patent infringement to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling, and/or

importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiffs' U.S. Patent No. 12,593,855 (the "Asserted Patent").

2.       The Asserted Patent is valid, subsisting, and in full force and effect.  Plaintiff SharkNinja Operating LLC is the owner and lawful assignee of all right, title, and interest in and to the Asserted Patent, which was duly and legally issued by the United States Patent and Trademark Office and SharkNinja Sales Company is an exclusive licensee of the Asserted Patent. A true and correct copy of the Asserted Patent is attached hereto as Exhibit 2.

3.       Each of the Defendants directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell, and/or sells products infringing the Asserted Patent (the "Infringing Products") in the United States, including in this Judicial District, and otherwise purposefully direct infringing activities to this District in connection with the Infringing Products.  Specifically, each Infringing Product infringes the Asserted Patent.  *See* Exhibits 3-5. Defendants conduct their infringing marketing and sales activities through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts and Seller IDs (collectively, the "Defendants' Internet Stores").

4.       Plaintiffs' genuine SharkNinja products and specifically, the Ninja SLUSHi Professional Frozen Drink Maker, Ninja SLUSHi XL Smart Frozen Drink Maker, and Ninja SLUSHi Max Smart Frozen Drink Maker (collectively, "SLUSHi" or the "SharkNinja Products"), rely on and incorporate the advancements claimed in the Asserted Patent.  The Infringing Products sold on Defendants' Internet Stores also incorporate and rely on those claimed advancements while selling inferior imitations of the SLUSHi.

5. The Internet Stores share unique identifiers, such as design elements and similarities among their Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6. Many of the defendants have attempted to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation. Plaintiffs are forced to file this action to combat Defendants' infringement of the Asserted Patent, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet.

7. As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing products embodying the designs and inventions protected by the Asserted Patent, and, therefore, seek injunctive and monetary relief.

8. The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of the Infringing Products.

9. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10. In addition, each Defendant has offered to sell and ship, and has sold and shipped, Infringing Products into this Judicial District.

## JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, §§ 271, 275, 283, 284, 285, 289, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

12.     Defendants are subject to personal jurisdiction in this Judicial District because they direct business activities toward and conduct business with consumers through the United States, including within the State of Florida and this Judicial District, through at least the Internet based e-commerce stores and fully interactive commercial internet websites accessible in Florida and operating under the Defendants' Internet Stores and Seller IDs.

13.     Plaintiffs have placed orders for, purchased, and received in this Judicial District each of the Infringing Products sold by Defendants, establishing that each Defendant is subject to personal jurisdiction in this District.  *See* Exhibit 6 (Declaration of Christopher Cheek).

14.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts with Internet based e-commerce stores (i.e., the Internet Stores) using the Seller IDs identified in Schedule A, as well as any and all, as yet undiscovered accounts with additional Internet based e-commerce stores held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them.  The Internet Stores maintained by Defendants permit consumers in the U.S., including Florida (and more particularly, in this Judicial District), to view the Infringing Products, as well as communicate (in some cases) with Defendants regarding their listings for the Infringing Products, and to place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including Florida (and more particularly, in this

Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

16. Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of patent infringement in this Judicial District, do substantial business in the Judicial District, and/or reside or may be found in this district.

**THE PLAINTIFFS**

17. SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, MA 02494. SharkNinja Operating LLC is the registered applicant and assignee of the Asserted Patent.

18. SharkNinja Sales Company is a Delaware Corporation organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, MA 02494. SharkNinja Sales Company is a wholly owned subsidiary of SharkNinja Operating LLC. SharkNinja Sales Company is an exclusive licensee of the Asserted Patent.

19. SharkNinja began three decades ago with the mission of providing innovative, user-friendly, and efficient household appliances that delight consumers and provide great value. From its start, SharkNinja has grown into a market leader. SharkNinja is now a global brand with over 20 categories of home appliance products, including, among other things, floorcare products, environmental products (such as fans and air purifiers), kitchen appliances, outdoor cooking

appliances, and, relevant to this case, frozen drink makers and systems.  SharkNinja has eight offices and thousands of employees in the United States.

20.     SharkNinja has a particular history as a pioneer and innovator.  SharkNinja devotes significant resources to research and development, including a team of more than 800 design engineers who focus on developing new products and features to improve and revolutionize household appliances.  This approach has been overwhelmingly successful:  SharkNinja has been awarded thousands of patents on its home appliance innovations.  The Asserted Patent at issue in this action is a testament to SharkNinja's history of innovation.

21.     Together, SharkNinja Operating LLC and SharkNinja Sales Company are involved in the sale and distribution of the SLUSHi product, and are collectively harmed by the infringing actions of the Defendants.

## THE SHARKNINJA PRODUCTS

22.     This action concerns SharkNinja's intellectual property rights related to its hugely successful "i" class of home appliances, which focuses on bringing innovative solutions to home kitchens.  SharkNinja began the "i" class with the Ninja "FOODi" line of air fryers.  SharkNinja's innovation continued with the Ninja "CREAMi," an ice cream maker launched in August 2021, that attracted significant consumer and press attention by allowing users to make ice cream-style desserts out of almost anything.  SharkNinja later expanded to the Ninja "SPEEDi," a 10-in-1 rapid cooker launched in March 2023, and then to the "THIRSTi," a carbonated beverage maker released in July 2023.  SharkNinja's most recent offering in this lineup is the SLUSHi, an offering of countertop professional-grade slush machines for home-use.

23.     Originally launched on July 11, 2024, the SLUSHi created a new frozen appliance category for home consumers.  Unlike prior frozen beverage appliances targeted to home

consumers, such as Margaritaville frozen drink machines (Fig. 1, which are essentially blenders and need ice), or Nostalgia frozen drink machines (Fig. 2, which use a chilled ice and salt chamber similar to conventional at-home ice cream machines), the SLUSHi (Fig. 3) reimagines the classic slush machine entirely, permitting consumers to make frozen slush drinks safely and quickly at home without ice.  Previously, such devices were available predominately in retail environments due to their large size, high-price point, and complicated operation.

  

Figure 1: Margaritaville Frozen Concoction Maker

Figure 2: Nostalgia Slush Drink Maker

Figure 3: SharkNinja SLUSHi

24.     The SLUSHi is designed with at-home users in mind.  At the press of a button, it can turn almost any liquid into slush quickly—in as little as 15 minutes—with no ice needed.  Following its launch, the SLUSHi gained a passionate following, including numerous positive reviews.  The SLUSHi's smash success was the result of over 18 months of significant consumer research, engineering, and development work by SharkNinja.  SharkNinja has significant intellectual property rights and interests relating to the innovations in the SLUSHi, including the Asserted Patent.

25.     Continuing to innovate on the successful design and functionality of the SLUSHi, SharkNinja introduced the Ninja SLUSHi XL and SLUSHi Max Smart Frozen Drink Makers,

which feature larger capacity (128 and 150 oz) mixing vessels, faster cooling, and SharkNinja's new SlushAssist™ technology that senses ingredients and auto-adjusts temperature, all while maintaining a countertop-sized form factor.

26.    SharkNinja is the official source of all SLUSHi products in the United States.

27.    SharkNinja Operating LLC is the owner and lawful assignee of all right, title, and interest in and to the Asserted Patent (attached as Exhibit 2).

28.    The SLUSHi utilizes the technology and inventions claimed in the Asserted Patent.

## THE SHARKNINJA ASSERTED PATENT

29.    SharkNinja has filed for and obtained patent protection for its technological developments and designs in the field of slush machines.  The developments claimed in the Asserted Patent were the product of the research and design efforts of SharkNinja's engineers.

30.    The '855 Patent relates to frozen drink makers, and in particular to frozen drink makers with a detachably connectable mixing vessel.  Exhibit 2, Abstract, 1:13-17.  The '855 Patent discloses "[a] unique lever … that provides helpful mechanical advantages, allowing a user to easily and securely couple the mixing vessel onto an upper housing of the frozen drink maker with just one hand, if desired." *Id.*, 1:60-63.

31.    Indeed, the '855 Patent explains that unlike prior commercial drink machines that "require[] a significant amount of force to seat the vessel over a large radial seal" and "mak[e] it challenging for a user to install and uninstall the vessel from the device," "there is a need for a more user-friendly architecture to install and uninstall the vessel of a frozen drink maker, such as … a lever that can be used to couple and decouple the vessel to a housing … with minimal force and/or that only requires one hand to use." *Id.*, 6:30-44.

8

32.     SharkNinja recognized the importance and market value of the '855 Patent and has used the inventions claimed in the Asserted Patent in the SLUSHi.

33.     SharkNinja markets the use of the inventions in selling its SLUSHi products.  For example, SharkNinja markets its SLUSHi products as being easy to fill and use, easy to clean, and small enough to fit on a kitchen countertop.

34.     SharkNinja has marked its SLUSHi with the Asserted Patent number, stating on the product box that "[t]his product may be covered by one or more U.S. Patents.  *See* sharkninja.com/patents for more information."  That URL leads to the following marking:[1]

**Ninja SLUSHi® (FS3 series)**
- 12,279,629
- 12,285,028
- D1,076,580
- D1,081,231
- D1,081,232
- D1,081,233
- D1,081,234
- D1,091,236
- 12,446,594
- 12,593,855

**Ninja SLUSHi® Max and Ninja SLUSHi® XL (FS6 series)**
- 12,279,629
- 12,285,028
- D1,081,232
- D1,081,233
- D1,081,234
- 12,446,594
- 12,593,855

---

[1] https://www.sharkninja.com/patents (last retrieved April 16, 2026).

**THE DEFENDANTS**

35.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China. Defendants conduct business throughout the United States including within Florida and in this Judicial District, through the Internet Stores using the Seller IDs. Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell, products that infringe SharkNinja's intellectual property to consumers within the United States, including Florida and in this Judicial District.

36.     On information and belief, Defendants are the past and present controlling forces behind the sale and offer for sale of the Infringing Products.

37.     Defendants directly compete with SharkNinja by advertising, making, using, offering for sale, selling, and importing the Infringing Products to consumers within the United States and this District through the Internet Stores on Internet based e-commerce stores using the Seller IDs, as well as additional names or seller identification aliases not yet known to SharkNinja. Defendants have purposefully directed at least a portion of their illegal activities towards consumers in the State of Florida (and this Judicial District) through advertisement, offers to sell, sales, and/or shipment of the Infringing Products into the State.

38.     On information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in infringing activities.

39.     On information and belief, Defendants will continue to register or acquire new seller identification aliases, such as new Seller IDs, for the purpose of selling and offering for sale goods that infringe the Asserted Patent unless preliminarily and permanently enjoined.

10

**THE DEFENDANTS' UNLAWFUL CONDUCT**

40.     The success of the SLUSHi has resulted in a significant number of products that infringe the Asserted Patent and other intellectual property rights in the market.

41.     Plaintiffs have identified numerous Seller IDs of the Defendants linked to fully interactive websites and marketplace listings, such as the Internet Stores, on e-commerce platforms as demonstrated in Exhibit 1 (Schedule A), which were and/or are offering for sale, selling, and importing products that infringe the Asserted Patent to consumers in this Judicial District and throughout the United States.

42.     Defendants have persisted in creating such online marketplaces, such as the Internet Stores.  In fact, online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion.

43.     Plaintiffs have not licensed or authorized Defendants to use the Asserted Patent, and none of the Defendants are authorized retailers of the SLUSHi.

44.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be selling products that are authorized to include the technical advancements developed by SharkNinja.

45.     On information and belief, Defendants deceive unknowing consumers by using the technology of the Asserted Patent in the product descriptions and images of their Internet Stores to attract customers.

11

46.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores.

47.     For example, it is common practice for persons selling infringing products to register their online marketplace accounts with incomplete information, randomly typed letters, or omitted cities or states.

48.     The Internet Stores provide the ability for Defendants to provide contact information, such as an e-mail address and phone number, but in many instances, Defendants do not provide that information.  In doing so, Defendants have concealed their identity and made it difficult for consumers to contact them.  On personal knowledge and belief, Defendants regularly create new online marketplace accounts (such as Internet Stores), Seller IDs, and websites on various platforms using the Seller IDs listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.

49.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names and Seller IDs, there are numerous similarities among the Infringing Products and Internet Stores.  For example, some of the Infringing Products have very similar designs, even though different aliases and/or Seller IDs were used with the Internet Stores.  The following table identifies exemplary similarities among the Infringing Products identified on Schedule A:

| Category | Exemplary Image |
|---|---|
| 1 |  Photograph of Keenstar Product. |
|  | Photograph of Keenstar Product. |

| 2 | Photograph of Luma Comfort Product. |
| 3 | Photograph of Relexnow Product. |



Photograph of Relexnow Product.

50.     The similarities between the Infringing Products for sale in the Internet Stores suggest that they are related to one another, including that the Infringing Products were manufactured by and come from a common source. Therefore, upon information and belief, Defendants are interrelated.

51.     The Internet Stores also include other notable common features, including product descriptions, lack of contact information, identically or similarly priced items, and the use of the same text and images.

52.     In addition, Defendants in this case and defendants in other similar cases involving online sellers of infringing products use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts, such as Seller IDs and Internet Stores, once they receive notice of a lawsuit.

53.     Sellers of infringing products also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of infringing and counterfeit goods shipped through the mail and express carriers.

54.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the Asserted Patent in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet.

55.     The Internet Stores offer shipping to the United States, including Florida (in this Judicial District) and each Defendant has offered to sell and has sold products (specifically, the Infringing Products) infringing the Asserted Patent into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming SharkNinja.

56.     As described below, Defendants are promoting, offering for sale, selling, and importing into the United States Infringing Products that directly infringe the Asserted Patent through at least the Internet e-commerce stores operating under the Internet Stores and Seller IDs.

57.     Defendants' infringing activities are done without Plaintiffs' consent or authorization.

58.     Defendants' infringing activities described herein have caused and continue to cause significant harm to Plaintiffs including lost sales, price erosion, lost market share and a significant negative impact on Plaintiffs' goodwill.

59.      Plaintiffs have no adequate remedy at law.

60.      Plaintiffs are suffering irreparable injury and have suffered substantial damages because of Defendants' unauthorized and wrongful use of the Asserted Patent.  If Defendants' infringement is not preliminarily and permanently enjoined by this Court, Plaintiffs will continue to be harmed.

61.      All conditions precedent to the bringing of this action have been satisfied, performed, excused, or would be futile.

### FIRST CAUSE OF ACTION
### UTILITY PATENT INFRINGEMENT (35 U.S.C. § 271)

62.      Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–61 of this Complaint.

63.      Defendants are manufacturing, distributing, offering for sale, selling, and/or importing into the United States, products which infringe directly or indirectly at least one or more claims of the Asserted Patent both literally and under the doctrine of equivalents.

64.      Defendants have attached as Exhibits 3-5 charts demonstrating how each of Defendants' products directly infringe at least Claim 24 of the '855 Patent.

65.      Defendants have infringed the Asserted Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from manufacturing, distributing, selling, using, offering for sale, and/or importing the patented inventions as well as the loss of sales stemming from the infringing acts.  Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.  Unless a preliminary and permanent injunction is issued enjoining Defendants and all others acting in concert therewith from infringing the Asserted Patent, Plaintiffs will continue to be irreparably harmed.

17

66.     Defendants' infringement of the Asserted Patent in connection with the Infringing Products has been and continues to be willful.

67.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Patent Act, including recovering damages adequate to compensate for the infringement, as well as Defendants' profits pursuant to 35 U.S.C. § 289, and any other damages as appropriate pursuant to 35 U.S.C. § 284.

## FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

a)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i.      making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that utilize the invention or technology as claimed in any of the claims of the Asserted Patent;

ii.     committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

iii.    further infringing the Asserted Patent and damaging Plaintiffs' goodwill;

iv.     aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Asserted Patent;

v.      shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory

18

not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe the Asserted Patent;

vi.     using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Infringing Products; and

vii.     operating and/or hosting online marketplace accounts at the Defendants' Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing the Asserted Patent.

b)     Entry of an Order that any other online marketplace account provider:

i.     disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

ii.     disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

iii.     take all steps necessary to prevent links to the Defendants' Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendants' Internet Stores from any search index;

c)     That Plaintiffs be awarded such damages as they shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of the Asserted Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

d)      That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of the Asserted Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

e)      That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

f)      Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury in this action on all issues so triable.

Dated:  April 30, 2026.

Respectfully submitted,

**Kevin C. Kaplan, Esq.**
Florida Bar No. 933848
kkaplan@coffeyburlington.com
lperez@coffeyburlington.com
**Christopher E. Cheek, Esq.**
Florida Bar No. 91363
ccheek@coffeyburlington.com
lmaltz@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, PH-1
Miami, Florida 33133
Tel:  (305) 858-2900

OF COUNSEL:

**Brian Rosenthal** *(pro hac vice forthcoming)*
brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York NY 10166-0193
Tel:  (212) 351-4000

**Brian Buroker** *(pro hac vice forthcoming)*
bburoker@gibsondunn.com
**Shuo Josh Zhang** *(pro hac vice forthcoming)*
szhang@gibsondunn.com

**David Brzozowski** (*pro hac vice forthcoming*)
dbrzozowski@gibsondunn.com
**Ramona Lin** (*pro hac vice forthcoming*)
rlin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel:  (202) 955-8500

**David Glandorf** (*pro hac vice forthcoming*)
dglandorf@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1900 Lawrence Street
Suite 3000
Denver, CO 80202-2211
Tel:  (303) 298-5700

*Counsel for Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company*