**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 26-cv-23083-RAR**
**(CONSOLIDATED WITH 26-cv-23084 AND 26-cv-23086)**

SHARKNINJA OPERATING LLC, and
SHARKNINJA SALES COMPANY,

      Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR ENTRY OF PRELIMINARY INJUNCTION**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja" or "Plaintiffs") respectfully move the Court to enter a preliminary injunction against the entities identified on Schedule A [ECF No. 10-41] (collectively, "Defendants") pursuant to 35 U.S.C. § 283, Fed. R. Civ. P. 65, the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority.  SharkNinja further requests a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2) and Federal Rule of Civil Procedure 65(b)(3).

**MEMORANDUM OF LAW**

I.     **INTRODUCTION**

Plaintiffs seek this injunction to stop a large and growing number of e-commerce operators from exploiting Plaintiffs' intellectual property by importing and selling products that infringe Plaintiffs' U.S. Patent No. 12,593,855 (the "'855 Patent" or the "Asserted Patent"), pending a final

determination on the merits.  SharkNinja spent many months developing the first compact, at-home slush machine that delivers consistent texture without pre-frozen ice to serve an unmet need in the market—the SLUSHi.  Unlike prior home appliances that required ice or ice-and-salt chambers, the SLUSHi defines a new product category without requiring ice and still fitting on a residential countertop beneath cabinets—bringing commercial-grade performance to consumers' kitchens.[1]

The '855 Patent (Exhibit 1) claims a frozen drink machine with a cam feature controlling the coupling of the mixing vessel and the upper housing of machine, allowing for a horizontal-loaded mixing vessel and a compact size.  Plaintiffs are the owner and exclusive licensee of the '855 Patent.

The SLUSHi's July 2024 launch was an instant, viral, and widespread success such that the SLUSHi has become synonymous with at-home slush makers and drove a standout 2024 holiday season.[2]  After the SLUSHi's unprecedented success, a tsunami of knockoffs appeared that infringe the Asserted Patent, forcing SharkNinja to compete against its own technology.  These knockoffs target U.S. consumers, including those in this District, through transient on-line listings on e-Retailer sites like Amazon.

Plaintiffs' efforts in enforcing their intellectual property rights, while initially effective, continue to be quickly counteracted by more transient listings marketing essentially the same knockoff products under new trade names and model names.  Already, the uniqueness of the SLUSHi as a product category is beginning to dissipate.  Unlike SharkNinja's other viral success stories—like the CREAMi, which was not beset by a wave of cheap knockoffs and thus enjoys

---

[1] The SLUSHi practices the '855 Patent, and each SLUSHi box is marked with a patent notice citing to https://sharkninja.com/patents/ which lists the '855 Patent, among others.

[2] SLUSHi XL and Max models with larger mixing vessels were later introduced as well.

strong brand recognition and goodwill—the Ninja SLUSHi is becoming commoditized. Another year and a half of rampant infringement during this case will dilute the brand entirely, beyond recovery. SharkNinja employee Stephanie Cugini (Exhibit 2, "Cugini Decl.") explains this unique and irreparable injury. This Whack-A-Mole situation needs stopping now to prevent irreparable harm, particularly before the upcoming summer months, an important period for frozen-drink machine products like SLUSHi. Defendants' continued unlawful activity would mean diverted sales, loss of market share and price premium, and erosion of brand equity in the very market SharkNinja created, which would be irreparable.

Later-awarded money damages will not compensate for Defendants' rampant infringement and would be a pyrrhic victory, since the Defendants have no real presence or assets in the United States to enable collection of the award. Permitting these Defendants to continue to infringe through the pendency of this case will eviscerate the Ninja SLUSHi brand and SharkNinja will have no recourse. SharkNinja pleas for the Court to use its equitable powers to prevent this result.

As detailed on Schedule A, Defendants operate fully interactive commercial internet storefronts (the "Internet Stores") through various online marketplace accounts to make, use, sell, offer for sale, or import products that infringe the Asserted Patent (the "Infringing Products") throughout the United States, including in this District. Each Infringing Product infringes the '855 Patent. Defendants purposefully direct these activities into this District and transact business with Florida consumers through their Internet Stores, establishing personal jurisdiction and venue.

Infringement of the '855 Patent is clear. The key feature of claims 24 and 30 — a cam feature controlling the coupling of the vessel — is visually apparent in all Defendants' accused products. Courts routinely assess and grant preliminary injunctions without full-blown discovery or claim construction. *Outside the Box Innovs., LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1302

3

(Fed. Cir. 2012).  Here, Mr. Michael Jobin's Declaration (Exhibit 3, the "Jobin Decl.") fully demonstrates the clear and strong evidence of infringement by the Defendants' products.  The Court possesses sufficient evidence to assess whether SharkNinja is likely to prevail on the merits.

This Court previously granted Preliminary Injunction relief against numerous similarly situated imitators of the Ninja SLUSHi on a different patent.  [1:25-cv-25323-RAR, ECF Nos. 261, 269] (the "261 Order" and the "269 Order" respectively).  Plaintiffs respectfully request that the Court similarly grant Preliminary Injunction here pending the resolution of this case.

## II.     STATEMENT OF FACTS

### A.     SharkNinja's Patent and Products

SharkNinja is a global product design and technology leader recognized for consistently redefining consumer experiences through disruptive innovation and bold design, earning an international reputation for quality, reliability, and value.  Exhibit 2, Cugini Decl., ¶ 7.

SharkNinja set out to solve an unmet need in the home appliance market for an at-home slush machine that is compact, countertop-worthy, user-friendly, and category-defining.  *Id.* ¶¶ 8-12.  Previous slush machines required pre-frozen ice and were typically tall, slow, cumbersome, oversized, loud, and produced inconsistent results.  Notably, previous slush machines did not allow continuous topping off of liquid during use and required removal of the unit from beneath a cabinet for refilling of ingredients, and SharkNinja recognized the need for a user-friendly method for attaching the vessel to the machine and sealing it requiring minimal user effort and force.  *Id*.

Starting in 2022 and over approximately 18 months, a cross-functional team of industrial designers, engineers, food scientists, and market researchers at SharkNinja devised a compact, countertop-suitable and user-friendly device that makes slush fast without ice, can be positioned under the cabinet, and is easy to maintain and operate.  *Id.* ¶¶ 11–13.  SharkNinja's engineers

devised and patented novel horizontal mixing vessel geometry and a cam feature controlling coupling of the housing and mixing vessel. *Id.* ¶ 13. SharkNinja Operating LLC is the owner of all rights, title, and interest in and to the '855 Patent and SharkNinja Sales Company is a licensee. *Id.* ¶ 6. SharkNinja created this new product category. SharkNinja launched the Ninja SLUSHi with a proven, high-velocity strategy designed to generate viral momentum: to define a product category and preserve the first mover brand equity which relies on a narrow, non-repeatable window during which consumers come to associate a new product category with SharkNinja as the original source. *Id.* ¶¶ 14, 24–25. This approach positioned the Ninja SLUSHi as the original in a new category, and established durable brand equity to support follow-on sales. *Id.*, ¶¶ 24–25.

**B.      Defendants' Unlawful Activities**

Following the successful launch of the Ninja SLUSHi, SharkNinja's proactive intellectual property protection sweeps uncovered a proliferation of online sellers offering knockoff slush machines that infringe SharkNinja's patented advancements, including those listed on Schedule A that infringe the '855 Patent notwithstanding SharkNinja's previous enforcement actions related to other SharkNinja patents. *Id.* ¶¶ 14–18.

Even though this Court granted a Preliminary Injunction against numerous imitators including Defendants Syintao, Fohere, and Wizaura (the 261 and 269 Orders) and entered default for others including Defendants Bizaura and Relexnow, [1:25-cv-25323-RAR, ECF No. 288], more offerings from the same sellers and from other sellers have quickly risen in their place under different trade names or model numbers, or with only superficial design changes. The Accused Products appropriate the very innovations that SharkNinja developed and patented while attempting to pass as legitimate alternatives to the SLUSHi. *Id.* ¶¶ 17–18. The Jobin Declaration shows that each Accused Product includes a cam feature that controls coupling the mixing vessel

to the upper housing section – the key feature in the '855 Patent.  The Jobin Declaration further demonstrates in detail that each of the identified Accused Products infringes at least claims 24 (and in some cases 30) of the '855 Patent.  Ex. 3; *see also* ECF Nos. 10-1 to 10-40.

The inclusion of the cam feature is no coincidence.  The cam feature drives consumer demand by enabling horizontal coupling and a horizontal geometry of the mixing vessel, allowing top openings for continuous topping off as well as easy installation and cleaning.  Consumer reviews reflect that the horizontal coupling and decoupling and the horizontal geometry of the mixing vessel enables easy set up and cleaning while fitting on the countertop, which lead to positive consumer feedback and consumer demand.  Cugini Decl., ¶ 12 and Exs. 4-7 thereto ("Easy to assemble, easy to use, easy to clean"; "Very easy to set up, very easy to clean! I love the sleek look and it fits perfectly on my counter"; "So easy to put together"; "The whole thing comes apart and goes back together REALLY easily for easy cleaning...").

Defendants are neither authorized resellers nor licensees of any SharkNinja intellectual property, including the Asserted Patent.  Cugini Decl. ¶ 20.  By infringing the Asserted Patent, Defendants divert sales that would otherwise accrue to SharkNinja, dilute SharkNinja's hard-earned market share, undermine the premium associated with its innovation, increase the risk of inferior product quality in the marketplace, and erode consumer trust.  *Id.*, ¶ 21.  Investigations further show that Defendants target U.S. consumers, including within this Judicial District: each Internet Store accepted payment in U.S. dollars and shipped into the Southern District of Florida.  Screenshots and records evidencing sale and shipment into Florida are compiled in Exhibit 4, Brzozowski Declaration, and ECF No. 10-43, Cheek Declaration.  In spite of SharkNinja's prior enforcement efforts, Defendants are launching and relaunching Internet Stores at a volume and pace that far exceeds ordinary market activity.  *Id.* ¶ 17.

In short, Defendants have been selling Infringing Products and leveraging SharkNinja's time- and capital-intensive innovations to field knockoffs that trade on the brand equity and consumer demand generated by SLUSHi's viral success. *Id.* ¶ 25.

### III.  PROCEDURAL BACKGROUND

On April 30, 2026, Plaintiffs filed their Complaint [ECF No. 1] in each of three related cases against three sets of Defendants for patent infringement pursuant to 35 U.S.C. § 271 (1:26-cv-23083-RAR, 1:26-cv-23084-RAR, and 1:26-cv-23086-RAR).  SharkNinja brought this case as soon as possible after the issuance of the '855 Patent on April 7, 2026.  Plaintiffs filed a Consolidated Complaint on May 7, 2026 [ECF No. 9] ("Compl.") as ordered by the Court [ECF No. 8].  Previously on November 14, 2025, Plaintiffs filed an enforcement action against certain imitation products' sellers for infringement of two other SharkNinja Patents in this Court (1:25-cv-25323-RAR).  Several Defendants overlap.  The Court granted a Preliminary Injunction against Defendants Syintao, Fohere, and Wizaura and entered default for Defendants Bizaura and Relexnow [1:25-cv-25323-RAR, ECF Nos. 261, 269, 288].

### IV.  ARGUMENT

#### A.  A Preliminary Injunction is Essential to Prevent Irreparable Injury

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that a Court may issue a preliminary injunction on notice to the adverse party.  Fed. R. Civ. P. 65(a)(1).  Plaintiffs thus are concurrently filing a Motion for Alternative Service for this motion with the Court.  This Court has personal jurisdiction over each Defendant.  *Louis Vuitton* Malletier*, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (the S.D. Fla. regularly exercises personal jurisdiction over websites selling infringing merchandise sold without authorization to Florida residents over the internet). The Court agreed in the prior proceeding that, at least for preliminary injunction purposes,

Defendants whose products were actually transacted for from Florida and shipped into the forum are subject to this Court's personal jurisdiction.  269 Order at 9–10.  Each Defendant's Internet Store offers for sale and each has actually sold and shipped Infringing Products into the District. Brzozowski Declaration (Exhibit 4) and Exhibits 1–750 thereto, Complaint [ECF No. 9] ¶¶ 11–15, Cheek Declaration and Exhibits A–NN thereto [ECF Nos. 10-43 through 10-83].  These exhibits provide vendor-by-vendor and product-by-product order records and photographs from each Internet Store demonstrating that each of the Infringing Products can be and ***has been purchased and shipped into the District***.  This sufficiently shows that each Defendant is subject to this Court's jurisdiction pursuant to Florida Statutes § 48.193(1)(a)(1)–(2) and § 48.193(1)(a)(6). This Court also has original subject matter jurisdiction over patent claims pursuant to 35 U.S.C. § 1 *et seq*., 28 U.S.C. §§ 1331, 1338(a)–(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

This Court recognized that the knock-off sellers' rampant infringement of SharkNinja's intellectual property rights constitutes irreparable harm and authorized injunctive relief in the previous case involving the same facts (though on a different patent).  261 Order at 35; 269 Order at 32.  Specifically, the Court recognized that price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm and did find that SharkNinja's loss of market share in the market SLUSHi pioneered can sufficiently demonstrate irreparable harm. 261 Order at 28–30; 269 Order at 29–30.

As the Court previously found, Defendants' ongoing infringement inflicts immediate, irreparable, and indivisible harm to Plaintiffs that warrants the Court's preliminary injunction relief.  Each Defendant here unlawfully makes, uses, sells, offers for sale, or imports goods that infringe the Asserted Patent via the Internet Stores.  By their actions, Defendants are eroding

consumer confidence, depleting SharkNinja's hard-earned brand equity, and diluting SharkNinja's market share. The number of Defendants in conjunction with their anonymity renders individual enforcement efforts impractical and ineffective. Furthermore, the similarity in Defendants' conduct and product offerings indicates a single, interconnected scheme that inflicts individual, concurrent, and indivisible injury on SharkNinja. *See, e.g.*, Compl., ¶49.

The upcoming summer months — including the upcoming Amazon Prime Day, predicted to be near the end of June — are a critical commercial window for SharkNinja's products. Cugini Decl. ¶¶ 24–26. SharkNinja's launches rely on fleeting, non-repeatable viral windows when consumer attention, brand equity, and first-mover recognition peak. *Id.* Allowing Defendants' infringement to continue through this period would siphon network effects, erode price integrity, and permanently dilute the goodwill and market position SharkNinja has built. *Id.* Proliferation of Defendants' Infringing Products also causes market share loss and price depression, diminished brand equity, and erosion of its position as the original source of this category defining product. *Id.*, ¶¶ 21-25. The Court's injunctive relief effectively alleviates the immediate irreparable harm from knock offs. Cugini Decl., ¶¶ 27–28. Without the relief requested herein, Defendants' infringing activities will continue unabated, nullifying the protection afforded by Plaintiffs' prior efforts and inflicting harm that cannot be compensated by monetary damage alone.

**B.      The Four Factors All Favor Entry of a Preliminary Injunction**

To obtain a preliminary injunction, a party must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). All of these factors strongly favor an injunction here against all

Defendants, as the Court already recognized in the previous cases involving the same underlying market facts, though a different patent. 261 and 269 Orders.

### 1. SharkNinja Is Likely to Succeed on the Merits

SharkNinja will likely succeed on its patent infringement claims. A plaintiff must show that an asserted patent would "more likely than not" withstand a validity challenge and that the patent is infringed to obtain preliminary relief. *Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-CV-03749-SCJ, 2022 WL 2784800, at *3 (N.D. Ga. May 31, 2022); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–80 (Fed. Cir. 2009). "Each issued patent carries with it a presumption of validity under 35 U.S.C. § 282" sufficient to establish a likelihood of success on the validity issue. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); *Doubleday Acquisitions*, 2022 WL 2784800, at *3. The '855 Patent is valid, enforceable, and in force. Compl., ¶ 2. Thus, Defendants face the statutory presumption of validity, and nothing before the Court undermines that presumption at this stage. *Tinnus*, 846 F.3d at 1205. Plaintiffs have not licensed or authorized Defendants to practice the Asserted Patent. Compl., ¶ 43; Cugini Decl., ¶ 20.

For patent infringement, courts first construe the patent claim and compare it to the accused product or method. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1376 n. 7 (Fed. Cir. 2023). Patent claims can be "literally" infringed, such that every claim element is present in the accused device, or infringed under the doctrine of equivalents. *Bristol-Myers Squibb Co. v. Andrx Pharms., Inc.*, 343 F. Supp. 2d 1124, 1133–34 (S.D. Fla. 2004).

The Jobin Declaration and Complaint painstakingly correlates ***each of the Accused Products*** (through photographs of physical samples purchased in preparation of this case) with each limitation of claim 24 (and some Accused Products to claim 30 as well). Exhibit 3; Compl., ¶ 63 and ECF Nos. 10-1 to 10-40. As demonstrated by his declaration and the evidence he relies

10

on, each of the Accused Products infringe at least Claim 24 (and in some cases 30) of the '855 Patent.  *See* Jobin Decl.  Central to the infringement analysis, each of the Infringing Products includes the claimed cam feature.  *See* Jobin Decl. ¶¶ 58–101; Compl., ¶ 49.  This is not rocket science and can be verified by plain visual inspection.  The purpose of a dial or lever located on the side of each Accused Product to be moved between two positions – one that couples the mixing vessel to the housing and one that decouples the mixing vessel to the housing.  The cam mechanism allows that coupling and decoupling to be performed with very little force by the user.

### 2. SharkNinja Will Suffer Irreparable Harm in the Absence of Preliminary Injunction

Defendants' ongoing sale of Infringing Products is causing SharkNinja brand equity depletion, loss of market share, price depression, and loss of exclusivity in the very market it created.  Cugini Decl. ¶¶ 20–27.  A patent confers "the right to exclude others from using his property."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)) (internal citation omitted).  Violation of a patent owner's "right to exclude" renders monetary remedies inadequate in circumstances where exclusivity, market position, and brand equity are actively depleted.  *Id.*; Compl. ¶¶ 58-61; Cugini Decl. ¶¶ 22–29.  This Court recognized that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."  269 Order at 30 (citing *Celsis In Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)).  "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Id.* at 29 (citing *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012)).

This Court further recognized that "there is no effective way to measure the loss of sales or potential growth—to ascertain the people who do not knock on the door or to identify the

specific persons who do not reorder because of the existence of the infringer." 261 Order at 28 (quoting *Celsis In Vitro, Inc.*, 664 F.3d at 930).  Claims for "[l]oss of goodwill may include a change in the marketplace resulting from customers establishing relationships with low-cost infringers." 261 Order at 28 (quoting *QBAS Co. v. C Walters Intercoastal Corp.*, 2010 WL 7785955, at *12 (C.D. Cal Dec. 16, 2010) (citing *Polymer Techs. v. Bridwell*, 103 F.3d 970, 975 (Fed. Cir. 1996))).  Price erosion naturally follows, as "[t]he customers may then refuse to pay higher prices for a product 'after years of paying lower prices to infringers.'" 261 Order at 28 (quoting *QBAS Co.*, 2010 WL 7785955, at *12 (quoting *Polymer Techs*. 103 F.3d at 975)).  The harm Defendants' activity is causing SharkNinja is therefore irreparable.

### a) SharkNinja Suffers from Irreparable Harm to Its Business And Brand

SharkNinja is suffering actual market dilution, price erosion, loss of virality and brand loyalty, and forced competition with its own inventions to which it has exclusive rights, because of the copycats as evidenced by comparing SLUSHi to past category-defining products like CREAMi.  Cugini Decl., ¶ 26.  This actual harm is not merely speculation.  "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro,* 664 F.3d at 930.  SharkNinja's showing of loss of market share is sufficient to show irreparable harm.  261 Order at 28–30; 269 Order at 29–30.

Ms. Cugini's Declaration illustrates the gravity of the harm suffered by SharkNinja that is being caused by knock-offs.  In 2024, when the Ninja SLUSHi product was launched, SLUSHi was the clear first mover and captured approximately 96% of the market, and there were no known competitors of this new category-defining product at launch.  Cugini Decl., ¶ 14.  The launch was viral, and "Ninja SLUSHi" became synonymous with this category of at-home slush machines. *Id.*

12

The overwhelming success brought the emergence of a large number of knockoffs onto the market. *Id.*, ¶ 15.  SharkNinja's business intelligence team actively monitor the market and have identified the Defendants as making, using, offering for sale, selling, and importing unauthorized products that infringe SharkNinja's '855 Patent.  Cugini Decl., ¶¶ 16–17.  While the countertop slush machine category was only recently invented and introduced to the market by SharkNinja in 2024, the proliferation of knockoffs is rapid.  The market segment keeps growing over time, but the Defendants' sales of infringing products derailed SLUSHi's dominant trajectory as predicted by past viral product launches such as CREAMi, eating a significant segment of the market's growth.  Cugini Decl., ¶26.  SharkNinja has had to conduct price discounts from time to time to maintain market share, a result of being forced to compete with the misappropriated technology SharkNinja itself invented. *Id.*, ¶18.

Since the Defendants began selling their infringing products, SharkNinja has suffered from decreased consumer confidence, brand equity depletion, and market status dilution—ongoing harm that cannot be adequately remedied by money damages.  *Id.* ¶¶ 21–25.  Defendants are free-riding on SharkNinja's time- and capital-intensive inventions, capturing sales that would otherwise accrue to SharkNinja, diluting market share, eroding price premium, and increasing the risk of poor product quality.  *Id.*  SharkNinja, through its SLUSHi, has become synonymous with being the innovator in the counter-top, at-home slush machine market, and the proliferation of infringers leveraging SharkNinja's patented features without its quality controls further injures SharkNinja's reputation and consumer trust in the brand, particularly given SharkNinja's social media-driven emphasis on groundbreaking design, ease of use, and cleaning.  Cugini Decl. ¶¶ 22–28.  Indeed, 2025 and early 2026 sales show the SLUSHi is at risk of underperforming relative to

prior category-defining launches of SharkNinja products. *Id*. This market data suggests ongoing diversion and brand dilution. *Id*.

Effective protection of SharkNinja's intellectual property right from rampant infringement requires more than one-off enforcement actions. Although SharkNinja successfully obtained Preliminary Injunction relief and default judgment against certain knockoff sellers in this District [1:25-cv-25323-RAR, ECF Nos. 261, 269, 288], Defendants have continued to establish these Internet Stores and engage in ongoing sales of the Infringing Products, often engaging in offering essentially the same products masked under different trade names or model numbers, or switching surface-level features. *Id.*, ¶ 17. Numbers show that the Court's injunctive relief effectively alleviates the immediate irreparable harm from a set of knock-offs. *Id.*, ¶ 27. Defendants defy SharkNinja's enforcement by quickly re-launching new offerings. For example, Defendants Relexnow and Bizaura, having not responded to SharkNinja's previous Complaint, simply listed similar knock-off products under various ASINs. Similarly, Defendants Syintao, Fohere, and Wizaura, while under a preliminary injunction which took their previous offerings of the infringing products off the market, also listed similar products under new ASINs.

### 3. The Harm to SharkNinja Is Irreparable Because Monetary Judgment Will Be Uncollectible

Irreparable harm warranting issuance of a Preliminary Injunction is also appropriate where "Defendants' business operations are geographically 'far-flung,' making the enforcement of a money judgment 'exceedingly difficult.'" *Canon, Inc. v. GCC Int'l Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008) (affirming grant of preliminary injunction against a foreign company). As discussed, Defendants have no or few U.S. assets, including those associated with their storefronts.

The shifty nature of Defendants' business model prevents any meaningful collection of any monetary judgment award against them. This fact alone makes the harm caused by Defendants

irreparable. The fact that a defendant is a foreign entity "alone is sufficient to show that [the plaintiff] will likely be irreparably harmed." *Aevoe Corp. v. Shenzhen Membrane Precise Electron Ltd.*, 2012 WL 1532308, at \*5 (D. Nev. May 1, 2012). Courts have indeed consistently found insufficiency of monetary damages where Defendants in a patent infringement case are foreign entities with no U.S. assets. *See Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) (finding that "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm."); *Shu v. Di*, 2025 WL 1483497, at \*4 (W.D. Pa. Apr. 11, 2025) (granting Preliminary Injunction against foreign infringers, noting that "Defendants are foreign corporations that allegedly continuously hide or change their identities, providing little assurance that Plaintiff could collect monetary damages.").

Here, in view of the fact that Defendants are all foreign companies with no U.S. presence or assets, any judgment at the conclusion of a trial on the merits will be virtually meaningless to SharkNinja. The damage will have been done, and SharkNinja will have no recourse to compensate for that damage.

### 4. The Irreparable Harm Is Being Caused By Defendants' Infringing Acts

The irreparable harm being suffered by SharkNinja is directly caused by Defendants' infringement. "[A]lthough the irreparable harm and the causal nexus inquiries may be separated for the ease of analysis, they are inextricably related concepts." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012). The design of the mixing vessel and the cam feature of the SLUSHi "embody a substantial part of the patented feature and not much else," and that "Plaintiffs have become the market leader suggests that they possess a superior technology, the technology of the [] patent." *LifeScan, Inc. v. Shasta Techs., LLC*, 933 F. Supp. 2d 1243, 1262 (N.D. Cal.) (refusing to extend *Apple v. Samsung* causal nexus analysis to a blood glucose testing strip product), rev'd and remanded sub nom. *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d

15

1361 (Fed. Cir. 2013) on other grounds. "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." 261 Order at 30–31 (quoting *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013)).

SharkNinja has not only proven that SharkNinja created a new market segment of under-cabinet and countertop home-use slush machine and became the pioneer and market leader, but also that the Defendants replicated one of the most important features enabling a slush machine to be under-cabinet and countertop covered by the Asserted Patent. Thus, the causal nexus between the irreparable harm and Defendant's infringement is strongly supported. Injunctive relief is essential to prevent further loss of market share and brand equity during a critical commercial period. Continued infringement will irreversibly erode network effects and first-mover recognition that cannot be restored after trial. Cugini Decl. ¶¶ 23–28.

Plaintiffs initially filed three separate cases against three groups of Defendants, grouped by apparent similarities of their Infringing Products. The Court noted that the "three cases allege common issues of law and fact" and exercised its discretion to consolidate. [ECF No. 7]. Rule 20(a)(2)(A) permits defendants to be "joined in one action . . . if any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." While each individual Defendant's actions, alone, cause Plaintiffs irreparable harm, the sheer number of Internet Stores is a force multiplier of those individual harms that creates a massive single reputational harm to Plaintiffs. SharkNinja faces significant economic and logistical challenges in enforcing its intellectual property rights against each Internet Store individually. Single Defendant enforcement in the face of the overwhelming infringement points of sale made possible by the unregulated and anonymous nature of the internet is impractical,

16

ineffective, and does not remedy the actual harm to SharkNinja caused by the combined effect of all of Defendants' simultaneous infringing operations. Defendants Syintao, Fohere, Wizaura, Bizaura and Relexnow simply offered similar products under new ASINs after SharkNinja's previous enforcement action. The imitators' launching and re-launching of infringing Products are at a pace far exceeding ordinary market activity. Cugini Decl., ¶ 17. The collective harm shown by SharkNinja's loss of market share is significant and "well exceeds" any "incremental" harm by any individual Defendant. 269 Order at 31.

The anonymity and mass-reach the internet provides makes identifying the full extent and scope of the Defendants' infringing operations nearly impossible. Defendants, each of whom is likely aware of the existence of the illegal marketplace and the activities of the others to perpetuate the same, are combining the force of their actions to cause individual, concurrent, and indivisible harm to Plaintiffs and consumers. The striking similarities of the Defendants' products strongly suggest that the Defendants' infringing products were manufactured by the same entity from the same infringing industrial design, and their infringing activities are concerted. Defendants' activities are all logically part of the same occurrence and each is therefore properly joined in this action under Fed. R. Civ. P. 20. *See Bose Corp. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511 (N.D. Ill. Feb. 19, 2020).

Immediate injunctive relief is essential to prevent further loss of market share and brand equity during a critical commercial period. Continued infringement will irreversibly erode network effects and first-mover recognition that cannot be restored. Cugini Decl. ¶¶ 24–28.

### 5. The Balance of Hardship Tips Sharply in SharkNinja's Favor

The balance of equities strongly favors immediate injunctive relief because the concrete, ongoing harm to SharkNinja from direct copying and loss of control over its patented product and brand vastly outweighs any claimed burden on Defendants, who have no lawful entitlement to

17

profits from their continued infringement. *See Schiavo*, 403 F.3d at 1225–26. As this Court has already found, SharkNinja's significant loss of market share for SLUSHi due to competition with its own technology suffices to favor preliminary injunction. 269 Order at 31.

SharkNinja is suffering present hardship "from loss of sales and its inability to control its reputation" because of Defendants' infringement. *See Daka Rsch., Inc. v. Individuals*, No. 22-cv-60246, 2023 WL 5310240, at *4 (S.D. Fla. July 14, 2023), *aff'd and adopted*, 2023 WL 5289258, at *1 (S.D. Fla. Aug. 17, 2023). SharkNinja's brand and reputation are harmed when the innovations protected by the Asserted Patent are incorporated into goods not authorized, produced, or manufactured by SharkNinja. Cugini Decl. ¶¶ 21–26. Defendants' infringing conduct strips SharkNinja of control over the quality of products embodying its patented design and technology and over its reputation that is not measurable or compensable with money damages. *Id.*, ¶ 21. This is particularly damaging because SharkNinja's social media strategy depends on consumer trust in authentic products, their ease of use and cleaning, and clear source identification. Defendants' infringing conduct undermines consumer confidence in SharkNinja's brand—market data shows that the SLUSHi may be underperforming relative to SharkNinja's previous category-defining product launches and risks losing its status as the at-home slush maker. *Id.* ¶¶ 25–26. Furthermore, Defendants' Internet Stores target U.S. consumers, accept U.S. dollars, and ship into the District. Compl. ¶¶ 12–15; Cheek Decl. [ECF No. 10-43]. Absent the requested injunctive relief, Defendants' actions will continue to divert demand from SharkNinja.

By contrast, being ordered to stop infringing patents they have no right to practice in the first place poses no hardship on Defendants. *See Daka Rsch.*, 2023 WL 5310240, at *4. Any harm Defendants claim is self-inflicted because they chose to build and sell Infringing Products. *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) ("[A] company

18

cannot build a business on infringements and then argue that enforcing the law will cripple that business."). The equities therefore weigh decisively in favor of an injunction.

### 6. Issuance of the Injunction is in the Public Interest

An injunction here serves the public interest by protecting consumers and safeguarding the patent system from ongoing harm. *See Daka Rsch.*, 2023 WL 5310240, at \*4; *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (public interest favors an injunction when the patentee practices his invention). Enjoining the ongoing online sale of infringing slush machines protects consumers from being misled by Infringing Products that trade on the Asserted Patent. *Daka Rsch.*, 2023 WL 5310240, at \*4. An injunction will ensure that consumers have a smooth and reliable experience with their slush machine as designed by SharkNinja and will prevent consumers from associating inferior products with SharkNinja. Injunctive relief would also advance the public's interest in technological progress and innovation. *Apple*, 809 F.3d at 647. "While the general public certainly enjoys lower prices, cheap copies of patented inventions have the effect of inhibiting innovation and incentive." 261 Order at 33–34 (citing *Douglas Dynamics*, 717 F.3d at 1346). "This detrimental effect, coupled with the public's general interest in the judicial protection of property rights in inventive technology, outweighs any interest the public has in purchasing cheaper infringing products." *Id.* "In sum, the public has a greater interest in acquiring new technology through the protections provided by the Patent Act than it has in buying 'cheaper knock-offs.'" *Id*.

### C. The Equitable Relief Sought is Appropriate

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Furthermore, F.R.C.P. 65(b) provides that a court may issue a preliminary injunction upon notice. The facts in this case warrant such relief.

19

Plaintiffs request that the Court issue a preliminary injunction that requires Defendants to cease manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products infringing the Asserted Patent, including the products identified on Schedule A.  SharkNinja is experiencing ongoing irreparable harm—including reduced consumer trust, brand equity depletion, and market status dilution—because of Defendants' ongoing infringement.  This relief is essential to continue to prevent erosion of market share and brand equity while this case is pending for final adjudication.  This Court has authorized injunctive relief previously involving the similar knock-off sellers of the Ninja SLUSHi engaging in the unauthorized and unlawful infringement of Plaintiffs' Patents.  261 and 269 Orders.  The Court should reach a similar conclusion here.  Plaintiffs do not seek an asset freeze.

**D.      A Posted Bond is Sufficient to Secure the Injunction**

The posting of security upon issuance of a preliminary injunction is vested in the Court's sound discretion.  Fed. R. Civ. P. 65(c).  Because of the strong and unequivocal nature of SharkNinja's counterfeiting evidence against Defendants, SharkNinja respectfully consents to post a bond up to one hundred thousand dollars ($100,000.00) at the Court's discretion.

**E.      Request for Hearing**

Under Local Rule 7.1(b)(2) and F.R.C.P. 65(b)(3), SharkNinja respectfully requests a hearing on its Motion.  SharkNinja estimates the time required will be approximately one day.

**V.      <u>CONCLUSION</u>**

SharkNinja respectfully requests that this Court schedule a hearing on SharkNinja's Motion for Preliminary Injunction pursuant to Local Rule 7.1(b)(2) and F.R.C.P. 65(b)(3)and issue a preliminary injunction as to Defendants in the form SharkNinja will submit to the Court prior to the hearing.

Dated:  May 8, 2026.

Respectfully submitted,

**Kevin C. Kaplan, Esq.**
Florida Bar No. 933848
kkaplan@coffeyburlington.com
lperez@coffeyburlington.com
**Christopher E. Cheek, Esq.**
Florida Bar No. 91363
ccheek@coffeyburlington.com
lmaltz@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, PH-1
Miami, Florida 33133
Tel:  (305) 858-2900

OF COUNSEL:

**Brian Rosenthal** (*pro hac vice forthcoming)*
brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York NY 10166-0193
Tel:  (212) 351-4000

**Brian Buroker** (*pro hac vice forthcoming*)
bburoker@gibsondunn.com
**Shuo Josh Zhang** (*pro hac vice forthcoming*)
szhang@gibsondunn.com

**David Brzozowski** (*pro hac vice forthcoming*)
dbrzozowski@gibsondunn.com
**Ramona Lin** (*pro hac vice forthcoming*)
rlin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel:  (202) 955-8500

*continued on next page…*

21

**David Glandorf** (*pro hac vice forthcoming*)
dglandorf@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1900 Lawrence Street
Suite 3000
Denver, CO 80202-2211
Tel:  (303) 298-5700

*Counsel for Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company*