# EXHIBIT "3"

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Civil Case No. 1:26-cv-23083

SHARKNINJA OPERATING LLC, and SHARKNINJA
SALES COMPANY,

*Plaintiffs*,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

*Defendants*.

**DECLARATION OF MICHAEL JOBIN**

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF OPINIONS ............................................................ 1

II.     QUALIFICATIONS AND COMPENSATION ................................................................... 2

III.    MATERIALS CONSIDERED .............................................................................. 6

IV.     THE ACCUSED PRODUCTS .............................................................................. 6

V.      LEGAL STANDARDS .................................................................................. 11

VI.     LEVEL OF ORDINARY SKILL IN THE ART ............................................................. 12

    a.  '855 Patent Person of Ordinary Skill in the Art ............................................. 12

VII.    THE ASSERTED PATENT .............................................................................. 12

    a.  The '855 Patent ............................................................................. 12

VIII.   INFRINGEMENT ANALYSIS – THE '855 PATENT ....................................................... 14

    a.  Claim 24 .................................................................................... 14

IX.     CONCLUSION ....................................................................................... 54

## I.   INTRODUCTION AND SUMMARY OF OPINIONS

1.   I am Michael Jobin.  I have been retained by Plaintiffs SharkNinja Operating LLC and SharkNinja Sales Company ("Plaintiffs" or "SharkNinja") as an expert in this litigation in connection with U.S. Patent No. 12,593,855 (the "'855 Patent" or "Asserted Patent") (Exhibit A).

2.   I have been asked to provide certain opinions regarding the Asserted Patent. Specifically, I have been asked to provide opinions regarding whether certain frozen drink maker (or "slush machine") products that I understand have been imported and/or sold in the United States infringe the Asserted Patent.

3.   I understand that SharkNinja filed three cases for patent infringement against different defendants in the Southern District of Florida.[1]  I further understand that on May 6, 2026, the Court entered orders in each of the SharkNinja cases consolidating the three cases into Case No. 1:26-cv-23083-RAR.[2]  As these cases are now consolidated, my opinions are reflective of all Defendants named in the SharkNinja Cases.  However, for purposes of organization, I have included below a chart detailing which Defendants were associated with each of the originally filed SharkNinja Cases.

| SharkNinja Case | Defendant | Exhibits |
|---|---|---|
| Case 1 | Keenstar, Luma Comfort, Relenow | 1-3 |
| Case 2 | Bizaura, BKPPM, Garvee, Generic (Wizaura), Neosism, Revotio, SUPWIN, Sweet (Bizaura), Syintao | 4-12 |

---

[1] *SharkNinja Operating LLC et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, Case No. 1:26-cv-23083-RAR (Apr. 30, 2026) ("Case 1"); *SharkNinja Operating LLC et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, Case No. 1:26-cv-23084-RAR (Apr. 30, 2026) ("Case 2"); *SharkNinja Operating LLC et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, Case No. 1:26-cv-23086-RAR (Apr. 30, 2026) ("Case 3") (collectively, the "SharkNinja Cases").

[2] *See* Case 1, at Dkt. 7; Case 2, at Dkt. 7, Case 3, at Dkt. 8.

| SharkNinja Case | Defendant | Exhibits |
|---|---|---|
| Case 3 | Aaobosi, AllTou, Astralship, Besococina, Blizzee, Casidea, Cowsar, CROWNFUL, Culvani, Dutepa, Fesoiu, Fohere, Foyoconven, GSEICE, HBN, Maipsig, Mazzen, MuliVid, NutriChef, ONtravelo, RyRot, Topteng, VELPAX, VNN, Wetie, Wie, Wind Shear | 13-40 |

## II.   QUALIFICATIONS AND COMPENSATION

4.      Below, I briefly summarize my educational background, career history, publications, and other relevant qualifications.  My full curriculum vitae is attached as **Appendix A** to this Declaration.

5.      I received two degrees from the University of Michigan in 1991, a Bachelor of Science, Engineering with a focus on mechanical engineering, and a Bachelor of Fine Arts, Industrial Design with a focus on product development, both cum laude. I was the recipient of the Kiefer Award for excellence in Industrial Design.

6.      I have worked in various product development companies throughout my 34-year career, and have developed many products that demonstrate knowledge and experience with the subject matter relevant in this case.  I provide below a summary of my relevant work experience and project examples.

7.      After my undergraduate degrees, I was hired as a program manager by Design 4 Plastics, Inc.  I leveraged my industrial design and engineering education to develop a wide range of products.  My projects included a heavy emphasis on plastic part design (including injection molding, rotational molding, vacuum and pressure forming) and sheet metal fabrication (stamping, forming). While there, I designed fluid pumps for laboratory and industrial fluid dispensing applications and a custom impeller pump for insufflation of the abdomen during laparoscopic surgery.

2

8. For Coca-Cola, I developed a disposable valve for a bag-in-box syrup dispensing system.

9. Next, in 1996, I joined Proteus, Inc. as Senior Mechanical Engineer. There, I focused on product design and engineering of products for consumer, medical, and laboratory applications.

10. For PUR, I developed a faucet mounted water filter with a replaceable cartridge and rotary actuated valve, and filtered water pitchers.

11. I founded Boston Innovation in 1998, focusing on developing precision fluidic dispensing instruments for pharmaceutical research applications that leveraged a novel pressure activated valve technology that I invented. In these instruments, sample fluid was stored in small sealed reservoirs, and precision low volumes dispensed by the translation of a needle and application of a rinse fluid and/or air pressure.

12. During this time, I developed and licensed novel valve technology to Delta Faucet. This project was focused on a high flow tub fill valve for residential plumbing use.

13. I founded MicroBioSciences in 2001. There, I invented and developed novel disposable fluid handling cartridges for high throughput screening in pharmaceutical research.

14. Later in 2001, I joined Altitude, Inc., a product development consulting firm, first as Engineering Manager, and then I was promoted to Director of Engineering in 2005. I performed design and engineering activities, and led a team of designers and engineers to develop a wide range of consumer products, medical devices and instrumentation.

15. I developed coffee makers for Sunbeam and Mr. Coffee, and a coffee carafe with refined pour spout to minimize drips.

16.     I developed a wide range of home humidifiers for Honeywell, Kaz, and Vicks. These included water reservoirs with removable caps and elastomer valves.

17.     I developed a water dispenser for PUR with chilled and heated water and dispensing valves.  This included a refillable water reservoir with wide mouth threaded cap and valve for easy cleaning.

18.     I developed the first integrated ice shaving and blending frozen drink appliances for home use for Margaritaville.  These products included a reservoir for ice, a robust motor and rotary ice shaving blade, a blender, and electronic controls.

19.     I developed a wine preservation and dispensing system for home use.  The product stored multiple wine bottles at the user-selected optimum temperature using thermoelectric chiller technology, and used valves and air pressure for dispensing, and vacuum for preservation.

20.     In 2008 I founded Aston Technology Advisors, and continued with product development and consulting activities.

21.     I worked with a major beer company on a home keg dispenser, including work on a plastic recyclable vessel for beer.

22.     In 2012, I cofounded 908 Devices Inc. to develop portable chemical detection instrumentation based on mass spectroscopy. There, I developed various instruments with applications in pharmaceutical research, forensics and hazardous material identification at the point of need. These instruments include complex fluid handling, fluidic and pneumatic connectors, custom vacuum pumps, pressure regulators and pressure sensors.

23.     At 908 Devices I developed various customized fluid vials, bottles, caps, gaskets and packaging for shipping chemical reagents.

4

24.     Throughout my professional career, I have designed products that have won various awards, including: Industrial Designers Society of America (IDSA) IDEA Awards, R&D 100, The Scientist Top 10 Innovations, and The Instrument Business Outlook Industrial Design Gold Award.

25.     I have served as an expert in multiple cases.  For example, in *Keurig, Inc. v. Kappos*, I was hired on behalf of the United States Patent & Trademark Office as an expert regarding technical concepts related to a USPTO Examiner's rejection of patent claims around Keurig's K-Cup coffee pods, including analysis of relevant prior art.  Key issues included high volume manufacturing of thermoformed plastic pods, forming and assembly of filter baskets and fluid flow through the system under high pressure. Ultimately, the USPTO Examiner's rejection was affirmed on appeal.

26.     As a further example, in *Nespresso USA, Inc. v. K-Fee System GMBH*, I was hired on behalf of Petitioner Nespresso for ten Inter Partes Review matters related to coffee beverage machines and capsules. I wrote ten declarations and was deposed 4 times. Following a ruling in one of the matters in which all challenged claims were determined to be unpatentable, the parties settled.

27.     I also testified as an expert this year for SharkNinja regarding frozen drink makers similar to the ones at issue in this case with respect to two SharkNinja patents: US Patent Nos. 12,285,028 and D1,091,236.

28.     For my efforts in connection with the preparation of this Declaration, I have been compensated at my standard rate for this type of consulting activity of $599 per hour.  My compensation is in no way contingent on the substance of my opinions or the results of this or any other proceedings.

5

## III.   MATERIALS CONSIDERED

29.     In forming the opinions set forth in this Declaration, I have relied on my background, education, and experience discussed above and as reflected in Appendix A.

30.     In addition, I have personally inspected a purchased sample of each of the accused slush machines in this case at counsel's offices in Miami, Florida.   I have also relied on photographs of the accused slush machines taken by counsel as well as online product listings of the accused slush machines.

## IV.   THE ACCUSED PRODUCTS

31.     The accused frozen drink makers accused by Plaintiffs are listed in **Appendix B** to my declaration, which is Exhibit 1 to the Amended Complaint filed in Case 1 (collectively, the "Accused Products").

32.     The Accused Products are frozen drink makers similar to SharkNinja's line of slush machines (referred to herein as the "SLUSHi").   These products are designed for the home preparation of frozen or icy beverages such as slushies, shakes, or smoothies.   The Accused Products each include a condenser that can cool and produce a partially frozen beverage without the consumer having to add ice into the machine. Previous generation frozen drink makers, such as the Margaritaville, required ice to be prepared externally and added to the machine, where the ice would be crushed, scrapped, or shaved.

33.     While there exist large commercial grade frozen drink makers that do not require ice to create slush, unlike commercial machines, the SharkNinja SLUSHi is small enough to fit on a home kitchen counter.   Crucially, a slush machine for home use must be short enough to fit in the space between the counter and the cabinetry present in a typical kitchen.   This, among numerous other functional and design aspects have led to the popularity of home frozen drink

6

makers, including ease of use, ease of cleaning, lack of leakage, intuitive controls, consistency of slush, elimination of ice blockages, and pleasing designs.

34. The Accused Products, like SharkNinja's SLUSHi, share a common overall arrangement of components. Below I reproduce Figure 1 and 2 from the '855 Patent, as well as images of SharkNinja's SLUSHi and examples of Accused Products.

| '855 Patent Figure 1 | '855 Patent Figure 2 |
| --- | --- |
|  | |
| SharkNinja SLUSHi[3] | Example Accused Products |

---

[3] https://www.sharkninja.com/ninja-slushi-professional-frozen-drink-maker/FS301.html



Fesoiu Accused Product[4]

Keenstar Accused Product[5]

BKPPM Accused Product[6]

---

[4] Sold at Amazon at ASIN B0GTSZLPZW.
[5] Sold at Amazon at ASIN B0DTHB6L3K / B0F7KL8BX9 / B0F9L29XPC
[6] Sold at Amazon at ASIN B0DT429T6D.

8

35.     As demonstrated above, each product includes a clear plastic mixing vessel (element 104 in Figure 1 of the '855 Patent) in which the frozen beverage is formed and stored. The frozen beverage is then dispensed out of a spout by actuating a lever at the front of the machine (element 120). *Id.* Within the mixing vessel there is a cylindrical condenser (element 202) as well as a rotating dasher (element 204, also known as an auger). *Id.* The dasher is turned by a motor that is housed in the upper portion of the black plastic housing (element 122). *Id.* The rotating dasher is crucial to the operation of these machines, as the rotation stirs the freezing mixture, allowing for the production of a consistent "slush" product in the vessel. Although the dasher and condenser cannot be seen in the above images of the slush machines due to the presence of a beverage in the mixing vessel, I have confirmed the presence of the dashers and evaporators in each Accused Product through my inspection of the products. Indeed, as examples, the dasher can be seen in the below images from the Fesoiu,[7] Keenstar,[8] and BKPPM[9] websites:

| Accused Product | Exemplary Image |
|---|---|
| Fesoiu | |

---

[7] https://www.amazon.com/dp/B0GTSZLPZW.
[8] https://www.amazon.com/KEENSTAR-Programs-Self-Cleaning-Margaritas-Milkshake/dp/B0F7KL8BX9/.
[9] https://www.amazon.com/dp/B0DT429T6D.

| Accused Product | Exemplary Image |
|---|---|
| Keenstar | |
| BKPPM | |

36.     A user prepares a frozen drink in the Accused Products by pouring in liquid ingredients through an opening on the top of the mixing vessel as seen in the above images (and

10

also as element 106 in Figure 1 of the '855 Patent).  The user then operates and controls the slush machine using the interface on the slush machine to instruct the maker to form a frozen beverage, which the maker achieves by cooling the liquid in the mixing vessel while it is being stirred by the dasher.  The clear plastic mixing vessel in each Accused Product is removable for user cleaning.

37.   I understand that the Accused Products in this case were purchased by counsel from online platforms such as Amazon and Walmart.com.  I have inspected each of the Accused Products in person at counsel's offices in Miami, Florida.

38.   I have noted that some of the Accused Products in this case have an overall substantively identical design across sellers, with only minor cosmetic differences, such as in Case 1 and Case 2.  These similarities among certain of the Accused Products indicate to me that the products likely originated from the same factory using a particular design plan, and that different seller logos were then affixed to the products, along with other minor design variations such as shape or color of various components.  For other of the Accused Products, it is possible that multiple sources or factories are responsible, and it is not possible to clearly define the groups of products as coming from particular sources without additional information.

## V.   LEGAL STANDARDS

39.   Counsel has informed me of the following legal principles of United States patent law as explained in this section, which I have applied in rendering my opinions herein.

40.   I understand that the utility patent Infringement analysis requires comparing properly construed claim elements to the Accused Products from the perspective of a person of ordinary skill in the art ("POSITA").  I further understand that infringement may be either literal infringement or infringement under the doctrine of equivalents, and that infringement may also be direct or indirect.

41.     As the patent holder seeking a remedy for infringement, I understand that Plaintiffs bear the burden of proof, which is a preponderance of the evidence.  This means that Plaintiffs must prove that infringement is more likely than not based on the evidence presented.

42.     I understand that direct infringement includes literal infringement.

43.     I am informed that a patent claim is literally infringed if the Accused Products fall literally within the scope of each limitation of the asserted claim.

## VI.     LEVEL OF ORDINARY SKILL IN THE ART

### a.  '855 Patent Person of Ordinary Skill in the Art

44.     In my opinion, a POSITA in the field of the '855 Patent at the time of the alleged invention would have had a bachelor's degree in either mechanical or chemical engineering or an equivalent field, plus at least 2 years of experience working in the field of consumer product mechanical design and testing including experience with injection molded parts.  More years of practical experience and technical training may substitute for educational requirements, while advanced education (such as a master's or Ph.D. degree) could substitute for experience.

45.     Based on my qualifications as previously discussed, and as detailed in my curriculum vitae (Appendix A), I meet, and in fact exceed, the articulation of a POSITA in this case.

## VII.    THE ASSERTED PATENT

46.     I have reviewed the '855 Patent.  Below I provide a brief summary of the patent and the technology described therein.

### a.  The '855 Patent

47.     The '855 Patent is entitled "Drink maker with detachably connectable mixing vessel" and issued from Application No. 18/423,894 on April 7, 2026.  The '855 Patent relates to

frozen drink makers, including the SLUSHi and Accused Products. In particular, the claims of the '855 Patent cover the manner in which the mixing vessel is detachably connected to the upper housing section of the frozen drink maker. *See* '855 Patent, at Abstract.

48.     The '855 Patent teaches configurations that allow an operator to easily and securely couple and decouple (and thereby remove) the mixing vessel from the drink maker housing with little effort. One advantage of the claimed configurations is that little force is needed by the user to install and remove the vessel. *See, e.g.*, '855 Patent at 1:60-63. Another aspect of the claimed configuration is the use of flexible seal that facilitates a secure seal between the vessel and the housing, limiting leakage. *Id.*, 1:66-67. Likewise, the configuration provides for a watertight seal between the evaporator (which extends into the vessel), and the vessel. *Id.* at 2:3-6. The flexible seal is advantageously configured to reduce the amount of force required to seal. *Id.*, 14:58-15:41; *see also* Figs. 8-9.

49.     Among the claimed features that leads to these advantages is the use of a cam mechanism. *See, e.g., id.*, 14:15-17; Figs. 5-6. The cam mechanism provides significant mechanical advantage allowing the user to couple the mixing vessel securely to the mixer using little force. In particular, the cams have channels or paths that engage protrusions on the vessel. As the cam is moved, the protrusions slide along these cam paths, which are shaped to progressively pull the mixing vessel against the upper housing, and to form a watertight seal with the housing. *Id.*, 14:6-43, Figs. 5B, 6. A cam mechanism can take various forms, such as the rotary over-center cam shown, or it may have alternative geometry. *Id.*, 14:44-46. A POSITA would understand that the cam paths and motions could take various forms. For example, the cam path could be modified to enable full engagement with larger or smaller angular motion. The cam paths could have an over-center or detent feature. Alternatively, the cam paths could move relative to a

rotation axis (commonly known as a rotary cam) or linearly (commonly known as a linear cam) to engage the vessel protrusions and form a seal.

50.     Some embodiments claimed in the '855 Patent employ a lever.  *See, e.g.*, *id.*, Claim 30.  The lever facilitates a secure and easy coupling and decoupling by allowing the user to move between a coupled and decoupled position with little force.   For example, in Figs. 5A and 5B, the lever is connected to a rotary cam.  As the lever is rotated, a POSITA would understand that the cam would rotate about the same axis.  A POSITA would further understand that the lever provides additional mechanical advantage beyond that provided by the cam itself, further contributing to the objective of coupling and uncoupling the vessel to the housing with low force.

## VIII.    INFRINGEMENT ANALYSIS – THE '855 PATENT

51.      Based on my review of the Accused Products, including my in-person review, photographs taken by counsel, and the products listings, it is my opinion that each of the Accused Products infringes at least independent claim 24 and, in some cases, dependent claim 30 of the '855 Patent.[10]   I have assisted in the preparation of charts (Exhibits 1-40 of my declaration) demonstrating that infringement, and I am willing and able to further discuss my opinions if called upon to do so.

52.     Because each Accused Product meets each limitation of at least independent claim 24 of the '855 Patent as shown in Exhibits 1-40, it is my opinion that the Defendants' actions of importing, offering to sell, and selling the Accused Products in the United States constitute acts of infringement.  In this Section, I explain each claim limitation and how the Accused Products meet them, as further detailed for each Accused Product in the exhibits.

   a.  **Claim 24**

---

[10] I am not offering an opinion on the infringement of any other claims of the '855 Patent at this time.

### i. Cl. 24[Pre.]: A frozen drink maker comprising:

53.     In my opinion, the Accused Products meet this limitation.

54.     Each Accused Product is a frozen drink maker.  For example, as shown below for the Fesoiu Accused Product, the packaging indicates that it is a "Slush Machine."



Photograph of Fesoiu Accused Product packaging

55.     As further examples, the Wetie, Luma Comfort, and BKPPM Accused Products are also frozen drink makers, as indicated on the packaging of these products as shown below.

15



Photograph of Wetie Accused Product packaging



Photograph of Luma Comfort Accused Product packaging



Photograph of BKPPM Accused Product packaging

56.     Similar language appears in the packaging or website materials for many of the Accused Products, and the primary function of each of the Accused Products is to make frozen drinks.

57.     Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

### ii.   Cl. 24[a]: a housing comprising an upper housing section and a cam feature moveable between a coupling position and an uncoupling position;

58.     In my opinion, the Accused Products meet this limitation.

59.     Each of the Accused Products includes a housing with an upper housing section and a cam feature moveable between a coupling position and an uncoupling position.  For example, as shown below for the Fesoiu Accused Product, there is an upper housing section, which is the black plastic section on the upper part of the product, next to the clear mixing vessel.

17



Photograph of Fesoiu Accused Product (annotated)

60.     Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each include a housing with an upper housing section and a cam feature moveable between a coupling position and an uncoupling position, as shown below.



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

61.     Each of the Accused Products also includes at least one cam feature moveable between a coupling and an uncoupling position, which a POSITA would understand to be met by a position where the mixing vessel is coupled to the upper housing section and a position where

the mixing vessel is uncoupled from the mixing vessel, respectively.  For example, below I show both positions for the cam feature of the Fesoiu Accused Product.



| Photograph of Fesoiu Accused Product (annotated) | Photograph of Fesoiu Accused Product (annotated) |
|---|---|

62.　　Furthermore, the manual for the Fesoiu Accused Product shows a lever in two different positions, which correspond to the cam feature being in a coupling and uncoupling position.



Fesoiu Accused Product Instruction Manual

63.	Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each include a cam feature moveable between coupling and uncoupling position, as shown below:



Photograph of Wetie Accused Product (annotated)



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)

22



Photograph of BKPPM Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

64. Likewise, the manuals for the Wetie, Luma Comfort, and BKPPM Accused Products each show a lever in two different positions, which correspond to the cam feature being in coupling and uncoupling position.



Wetie Accused Product Instruction Manual

23



Luma Comfort Accused Product Instruction Manual.



BKPPM Accused Product Instruction Manual

65. While I have discussed the example Fesoiu, Wetie, Luma Comfort, and BKPPM Accused Products above, each of the Accused Products has similar features and operates in a similar manner. Exhibits 1-40 to my Declaration set forth for each Accused Product how this limitation is met by that Accused Product.

iii. **Cl. 24[b]: a mixing vessel to receive a drink product, the mixing vessel having:**

24

66.     In my opinion, the Accused Products meet this limitation.

67.     Each Accused Product comprises a mixing vessel to receive a drink product.  For example, I have indicated the clear mixing vessel in the below photograph of the Fesoiu Accused Product.  A POSITA would understand that it is this vessel that will receive a drink product.



Photograph of Fesoiu Accused Product (annotated)

68.     Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each comprise a mixing vessel to receive a drink product, as shown below.

25



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)

26



Photograph of BKPPM Accused Product (annotated)

69.     Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

### iv.   24[b][i]: a first end with a first opening and a second end with a second opening configured to dispense drink product; and

70.     In my opinion, the Accused Products meet this limitation.

71.     The Accused Products each comprise a mixing vessel with a first end with a first opening and a second end with a second opening configured to dispense drink product.  For example, as in the below photograph of the mixing vessel for the Fesoiu Accused Product, I have indicated the second end which has the second opening, which is the opening configured to dispense the drink product, as well as the first end with the first opening.



Photograph of Fesoiu Accused Product (annotated)

72.     Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each comprise a mixing vessel with a first end with a first opening and a second end with a second opening configured to dispense drink product, as shown below.



Photograph of Wetie Accused Product (annotated)

28



Photograph of Luma Comfort Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

73.    Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

### v.  Cl. 24[b][ii]: a pour-in opening located on the mixing vessel between the first end and the second end;

74.    In my opinion, the Accused Products meet this limitation.

75.    Each Accused Product has a mixing vessel that includes a pour-in opening located on the mixing vessel between the first end and the second end.  For example, I have indicated the

29

pour-in opening for the Fesoiu Accused Product in the below image.  For example, as shown below, the opening is located between the first end and second end of the mixing vessel.



Photograph of Fesoiu Accused Product (annotated)

76.  Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each have a mixing vessel that includes a pour-in opening located on the first end and the second end of the mixing vessel, as shown below.



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

77.     Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

### vi.   Cl. 24[c]: a dasher configured to rotate in the mixing vessel;

78.     In my opinion, the Accused Products meet this limitation.

79.     The Accused Products each comprise a dasher configured to rotate in the mixing vessel.  For example, I have indicated the dasher present in the Fesoiu Accused Product.  In this case, the dasher is the orange plastic spiral shaped element.  Each Accused Product has a dasher (also known as an auger) that is configured to rotate in the mixing vessel in order to mix or stir the frozen drink.



Photograph of Fesoiu Accused Product (annotated)

80.     Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each comprise a dasher configured to rotate in the mixing vessel, as shown below.

32



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

81.     Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

### vii.   Cl. 24[d]: a motor to drive the dasher;

82.     In my opinion, the Accused Products meet this limitation.

83.     Each Accused Product includes a motor to drive the dasher.  A POSITA would understand that each Accused Product includes a motor to drive the dasher so that the dasher can mix and stir the drink product.  I have confirmed for each Accused Product that the dasher is driven by a motor to rotate during operation.  As an example, product testing confirms that the Fesoiu Accused Product includes a motor to drive the dasher.

84.     Likewise, the manuals for the Wetie, Luma Comfort, and BKPPM Accused Products each refer to a "motor," as shown below.



| 6 | E3 on display | Motor stall, or stirring blade deformation. | Remove and reassemble the mixing blade. Turn off the power, unplug the device, then reconnect the power and turn it on again. If the issue persists, please contact a professional service center for repair. |

Wetie Accused Product Instruction Manual.

**Rinse**
- Rinsing function rotates the auger without cooling the evaporator cylinder.
- Fill the vessel with tap water after using the unit to make slushies.

Luma Comfort Accused Product Instruction Manual.

**RESETTING THE MOTOR**

This unit is equipped with a unique safety system which can prevent damage to the motor and drive system in case you accidentally overload it. If the unit gets overloaded, the motor will be temporarily disabled. In such a situation, please follow the reset procedure below:

1. Let the unit cool down for around 15 minutes.
2. Take off all parts and accessories. Make sure that no ingredients are blocking the auger.

**IMPORTANT:** Ensure that you do not exceed the maximum capacity. This is the most common reason for the appliance to get overloaded.

Do not process a solid block of ice or ice cubes. Also, do not make smoothies or process hard and loose ingredients. If your unit requires servicing, please contact our Customer Service by mail.

BKPPM Accused Product Instruction Manual.

85. Product testing also confirms that the Wetie, Luma Comfort, and BKPPM Accused Products each include a motor to drive the dasher.

86. Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

> **viii. Cl. 24[e]: an evaporator configured to be received through the first opening and be positioned within the mixing vessel; and**

87. In my opinion, the Accused Products meet this limitation.

88.     Each Accused Product comprises an evaporator configured to be received through the first opening and be positioned within the mixing vessel.  For example, I indicate the evaporator for the Fesoiu Accused Product in the below image.  In the image, it can be seen that the evaporator is configured to be received through the first opening of the mixing vessel, and therefore be positioned within the mixing vessel.



Photograph of Fesoiu Accused Product (annotated)

89.     Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each comprise an evaporator configured to be received through the first opening and be positioned within the mixing vessel, as shown below.

36



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

90.     Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

### ix.   Cl. 24[f]: a flexible seal arranged proximate to the upper housing section;

91.     In my opinion, the Accused Products meet this limitation.

92.     The Accused Products each include a flexible seal arranged proximate to the upper housing section.  For example, I have indicated the flexible seal present for the Fesoiu Accused Product, where it is proximate to the upper housing section.



Photograph of Fesoiu Accused Product (annotated)

93.     Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each include

a flexible seal arranged proximate to the upper housing section, as shown below.



Photograph of Wetie Accused Product (annotated)

39



Photograph of Luma Comfort Accused Product (annotated).



Photograph of BKPPM Accused Product (annotated)

94.     My inspection of each Accused Product confirms that the seal is comprised of a material that is flexible.

95.     Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

40

**x. Cl. 24[g]: wherein the cam feature controls coupling the mixing vessel to the upper housing section when in the coupling position and uncoupling the mixing vessel from the upper housing section when in the uncoupling position, and**

96.     In my opinion, the Accused Products meet this limitation.

97.     In each Accused Product, the cam feature controls coupling the mixing vessel to the upper housing section when in the coupling position and uncoupling the mixing vessel from the upper housing section when in the uncoupling position.  For example, in left side image below, I show the cam feature of the Fesoiu Accused Product in the coupling position, where the cam feature has coupled the mixing vessel to the upper housing section.  In the image on the right, I show the cam feature of the Fesoiu Accused Product in the uncoupling position, where the cam feature has uncoupled the mixing vessel from the upper housing section.



Photograph of Fesoiu Accused Product (annotated)

Photograph of Fesoiu Accused Product (annotated)

98.     Furthermore, the Fesoiu Accused Product Manual indicates that the release lever, which is connected to the cam feature, controls whether the mixing vessel is coupled (locked) to the upper housing section.

41



Fesoiu Accused Product Instruction Manual.

99.     Likewise, in each of the Wetie, Luma Comfort, and BKPPM Accused Products, the cam feature controls coupling the mixing vessel to the upper housing section when in the coupling position and uncoupling the mixing vessel from the upper housing section when in the uncoupling position, as shown below.

42



| | |
|---|---|
| Photograph of Wetie Accused Product (annotated) | |



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)

43



Photograph of BKPPM Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

100.    Likewise, each of the manuals for the Wetie, Luma Comfort, and BKPPM Accused Products indicates that the release lever, which is connected to the cam feature, controls whether the mixing vessel is coupled (locked) to the upper housing section.



Wetie Accused Product Instruction Manual

44



Luma Comfort Accused Product Instruction Manual.



BKPPM Accused Product Instruction Manual.

101.    Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

xi.  **Cl. 24[h]: wherein, when the cam feature is in the coupling position, the first opening of the mixing vessel is positioned to face horizontally and is sealed by the flexible seal.**

102.    In my opinion, the Accused Products meet this limitation.

45

103.    The Accused Products are each configured such that when the cam feature is in the coupling position, the first opening of the mixing vessel is positioned to face horizontally and is sealed by the flexible seal.  For example, as shown below for the Fesoiu Accused Product with the cam feature in the coupling position, the first opening faces horizontally and is sealed against the flexible seal.



Photograph of Fesoiu Accused Product (annotated)

104.    Likewise, when the cam feature of each of the Wetie, Luma Comfort, and BKPPM Accused Products is in the coupling position, the first opening of the mixing vessel is positioned to face horizontally and is sealed by the flexible seal, as shown below.



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of BKPPM Accused Product (annotated)

105.    Exhibits 1-40 to my Declaration demonstrate how this limitation is met by all other Accused Products in a similar manner.

   **xii. Cl. 30. The frozen drink maker of claim 24, wherein the housing comprises a lever moveable relative to the upper housing section, wherein moving the lever to a first position moves the cam feature into the coupling position, and wherein, when in the coupling position, the cam feature engages at least one mating feature on the mixing vessel to control coupling of the mixing vessel to the upper housing section.**

106.    In my opinion, the Keenstar, Luma Comfort, Relexnow, Bizaura, BKPPM, Garvee, Generic (Wizaura), Neosism, Revotio, SUPWIN, Sweet (Bizaura), Syintao, Astralship, Cowsar, CROWNFUL, Fesoiu, GSEICE, Maipsig, Mazzen, Mulivid, NutriChef, Ontravelo, Topteng, Velpax, and Wetie Accused Products meet each limitation of dependent claim 30 (Exs. 1-12, 15, 19-20, 23, 26-27, 29-33, 35-36, and 38) (the "Lever Accused Products").

107.    For each of the Lever Accused Products, the housing further includes a lever moveable relative to the upper housing section, wherein moving the lever to a first position moves the cam feature into the coupling position, and wherein, when in the coupling position, the cam

48

feature engages at least one mating feature on the mixing vessel to control coupling of the mixing vessel to the upper housing section..  For example, I have indicated the lever present in the Fesoiu Accused Product in the below pictures.



| Photograph of Fesoiu Accused Product (annotated) | Photograph of Fesoiu Accused Product (annotated) |
|---|---|

108.    Likewise, the Wetie, Luma Comfort, and BKPPM Accused Products each also have a lever moveable relative to the upper housing section, as shown below.



Photograph of Wetie Accused Product (annotated)



Photograph of Wetie Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)



Photograph of Luma Comfort Accused Product (annotated)





| Photograph of BKPPM Accused Product (annotated) | Photograph of BKPPM Accused Product (annotated) |

109.    In each of the Lever Accused Products, moving the lever to a first position moves the cam feature into the coupling position.  Indeed, when the cam feature is in the coupling position on each Lever Accused Product, the cam feature engages at least one mating feature on the mixing vessel to cause the mixing vessel to couple to the upper housing section.  As an example, in the left image of the Fesoiu Accused Product below, I show the lever moved to a first position so that the cam feature engages at least one mating feature on the mixing vessel to cause the mixing vessel to couple to the upper housing section.  In the right image of the Fesoiu Accused Product below, I indicate the mating feature of the mixing vessel.



Photograph of Fesoiu Accused Product (annotated)



Photograph of Fesoiu Accused Product (annotated)

110.   Likewise, in each of the Wetie, Luma Comfort, and BKPPM Accused Products, moving the lever to a first position moves the cam feature into the coupling position, which engages at least one mating feature on the mixing vessel to cause the mixing vessel to couple to the upper housing section, as shown below.



Photograph of Wetie Accused Product (annotated)



Photograph of Wetie Accused Product (annotated)





Photograph of Luma Comfort Accused Product

(annotated)

Photograph of Luma Comfort Accused Product (annotated)





Photograph of BKPPM Accused Product (annotated)

Photograph of BKPPM Accused Product (annotated)

111.    As shown in the Exhibits 1-40 to my Declaration, this limitation is met by all other Accused Products.

## IX.   CONCLUSION

112.   For the reasons stated above, it is my opinion that all of the Accused Products infringe independent Claim 24, and each of the Lever Accused Products infringe dependent Claim 30.

113.   I reserve the right to supplement and amend my opinions as this case continues and in view of certain evidence and information that may become available during the course of discovery in this case.


Executed this 7th day of May, 2026 in Naples, Florida.

_____
Michael Jobin