**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 1:26-cv-23083-RAR-LFL**

**SharkNinja Operating LLC et al**

      Plaintiff,

v.

**The Individuals, Corporations, Limited**

**Liability Companies, Partnerships and**

**Unincorporated Associations Identified**

**in Schedule A Hereto**

      Defendants.

_____/

**YU DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendants Garvee, REVOTIO, SUPWIN, SYINTAO, CULVANI, FOHERE, VNN, WIE, Astralship, Nutrichef, Crownful, ontravelo, AllToU, Besococina, Velpax, NEOISM (NEOISM store), NEOISM (KangYiYuan) (collectively, "Yu Defendants"), by and through undersigned counsel, respectfully oppose Plaintiffs' Motion for Preliminary Injunction [ECF Nos. 11, 58]. Plaintiffs seek extraordinary preliminary relief based on U.S. Patent No. 12,593,855 (the "'855 Patent"), titled "Drink Maker with Detachably Connectable Mixing Vessel." The '855 Patent was filed on January 26, 2024 and issued on April 7, 2026—less than one month before Plaintiffs commenced this action. Plaintiffs allege that Yu Defendants infringe the '855 Patent through the sale of frozen-drink-maker products identified in the Consolidated Complaint.

In support of their opposition, Yu Defendants state as follows:

**INTRODUCTION**

Plaintiffs ask this Court to impose sweeping marketplace relief based on a newly issued, untested patent that is not directed to frozen-drink makers generally, but to a specific mechanical arrangement for a "detachably connectable mixing vessel." Plaintiffs' own motion identifies the

alleged "key feature" of asserted claims 24 and 30 as "a cam feature controlling the coupling of the vessel." ECF No. 11 at 3; ECF No. 58 at 4. That narrow asserted feature is absent from Yu Defendants' accused products.

The Renewed Motion should be denied. Plaintiffs cannot satisfy the requirements for preliminary injunctive relief. First, Plaintiffs have not shown a likelihood of success on the merits because the accused products do not practice the asserted invention. Second, asserted Claims 24 and 30 face substantial validity challenges, including obviousness under 35 U.S.C. § 103 in view of prior art disclosing the relevant frozen-drink-maker architecture and vessel-coupling mechanisms, as well as substantial questions under 35 U.S.C. § 112 concerning indefiniteness, written description, enablement, and functional claiming. At the preliminary-injunction stage, those substantial questions are sufficient to defeat Plaintiffs' likelihood-of-success showing.

Third, Plaintiffs have not shown irreparable harm caused by the alleged infringement. Their asserted injuries—market competition, price pressure, alleged loss of first-mover advantage, and alleged brand dilution—are tied to the overall at-home slush-machine category and to unclaimed product attributes such as no-ice operation, countertop size, capacity, speed, drink texture, and general ease of cleaning. **They are not tied to the specific claimed cam-controlled vessel-coupling feature.** Plaintiffs' own marketplace-facing advertising confirms the point: Plaintiffs promote their products based on those unclaimed attributes, not on any claimed advantage through a cam/lever mechanism.

Fourth, the balance of hardships and the public interest disfavor Plaintiffs' requested injunction. Plaintiffs seek to ban the sale of entire frozen-drink-maker appliances—during the summer season, when demand is predictably highest—**based on alleged infringement of a narrow mechanical feature that Plaintiffs do not even advertise as a material consumer-facing advantage.** The requested relief would remove competing products from the marketplace before claim construction, discovery, or a merits determination, despite substantial noninfringement and invalidity defenses.

Plaintiffs' requested injunction would improperly convert a narrow, newly issued mechanical patent of a small part into *de facto* control over an entire product category. Patent law does not permit that result. For purposes of this preliminary-injunction record, this case is not about stopping proven infringement. It is about whether Plaintiffs may use **an untested patent directed to a limited vessel-coupling mechanism** to exclude lawful competitors selling materially different frozen-drink-maker products. The answer should be no.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy" that is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a Plaintiff must establish: (1) a likelihood of success on the merits; (2) irreparable harm absent an injunction; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Id*. at 20. A trial court may deny a preliminary injunction based on failure to show any one factor, "especially either of the first two," without analyzing the rest. *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002).

In patent cases, there is no automatic injunction merely because a patent exists; the ordinary four-factor test still apply to patent injunctions. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006). For preliminary injunction, Plaintiff must show likely infringement and that the patent likely will withstand validity challenges. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–79 (Fed. Cir. 2009). Importantly, the accused infringer **need not prove invalidity by clear and convincing evidence at the preliminary-injunction stage**, but simply raising a "substantial question" of invalidity would be enough. *Id.* at 1377–79 (emphasis added). In other words, "[i]nstead of the alleged infringer having to persuade the trial court that the patent is invalid, at this [preliminary injunction] stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Id.* at 1377; *see also Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) ("Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial.").

3

## ARGUMENTS

### I. PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs cannot satisfy the first preliminary-injunction factor. A patentee seeking preliminary injunctive relief must show that it will likely prove infringement and that the asserted claims will likely withstand validity challenges. *Titan Tire*, 566 F.3d at 1376–79. If the accused infringer raises a substantial question concerning either infringement or validity that the patentee cannot show lacks substantial merit, a preliminary injunction should not issue. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001). "Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Id.* at 1359. The accused infringer therefore need not prove invalidity by clear and convincing evidence at this stage; it need only raise a substantial validity question. *Titan Tire*, 566 F.3d at 1377–79.

Plaintiffs' infringement theory also creates a classic infringement/validity squeeze. The same claim scope must govern both infringement and validity. Plaintiffs cannot read the claims broadly enough to capture Defendants' structurally different products while reading the same limitations narrowly to avoid the prior art. *Amazon.com*, 239 F.3d at 1351. Nor may Plaintiffs invoke the doctrine of equivalents to obtain a range of coverage that would ensnare the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683–85 (Fed. Cir. 1990).

The prosecution history confirms that the disputed limitations are material. During prosecution, after the PTO rejected the pending claims, Applicant amended prosecution Claim 30—which corresponds to issued Claim 24—to add limitations including a dasher, a motor, an evaporator received through the first opening and positioned within the mixing vessel, and the requirement that, when the cam feature is in the coupling position, the first opening is positioned to face horizontally and is sealed by the flexible seal. Ex. 2, Sept. 26, 2025 Amendment and Remarks. Applicant then argued that the cited art failed to disclose the claimed horizontal coupling/sealing arrangement. *Id.* Those amendments and arguments foreclose Plaintiffs from treating "cam feature," "uncoupling," "first opening . . . positioned to face horizontally," and

"sealed by the flexible seal" as elastic terms divorced from the claimed arrangement.

Solely for efficient analysis of the accused products' noninfringing attributes, and without conceding that joinder is proper under 35 U.S.C. § 299, the accused products may be grouped by their shared locking, vessel, outlet, sealing structures, and other characteristics. Section 299 does not permit joinder based solely on allegations that unrelated defendants each infringed the same patent. Group A consists of Garvee, NEOISM (NEOISM Store), NEOISM (KangYiYuan), REVOTIO, SUPWIN, SYINTAO; Group B consists of FOHERE, VNN, Wie; Group C consists of the remaining Yu Defendants.

Under any validity-preserving construction, no accused product infringes Claims 24 or 30. First, the accused knobs, rotating plates, and locking members are not the claimed "cam feature moveable between a coupling position and an uncoupling position." Claim 24 does not merely require a user-operated lock. It requires a cam feature that controls both coupling of the mixing vessel to the upper housing section and uncoupling of the mixing vessel from the upper housing section. Claim 30 further requires that a lever move the cam feature into the coupling position and that the cam feature engage a mating feature on the mixing vessel to control coupling.

The intrinsic record confirms the required cam-controlled movement. The specification describes a lever/handle structure with cams 113a and 113b, cam paths 109a and 109b, and protrusions 115a and 115b on the mixing vessel. When the cams rotate toward the rear, the protrusions slide along the cam paths and are pulled toward the upper housing section, pressing the mixing vessel against the upper housing section to form a watertight seal. When the cams rotate toward the front, the protrusions are pushed away from the upper housing section, causing the mixing vessel to decouple. Ex. 3, US12593855B2, col. 14, lines 39-43 ("When the cams 113 a, 113 b are rotated toward the front of the frozen drink maker 100, the protrusions 115 a, 115 b are pushed away from the upper housing section 122, causing the mixing vessel 104 to be decoupled from contact with the upper housing section 122."). This is not a generic lock/release concept; it is a cam-path/follower interaction that **controls relative vessel movement, dragging it in or pushing it away**.

Plaintiffs' contrary reading also creates a substantial § 112 problem. The term "cam feature" does not expressly use the word "means," so § 112(f) does not automatically apply. But that presumption can be overcome where the claim term fails to recite sufficiently definite structure or recites function without sufficient structure for performing it. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348–52 (Fed. Cir. 2015); *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365–67 (Fed. Cir. 2022); *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1341–45 (Fed. Cir. 2019). If "cam feature" is given its ordinary mechanical meaning, the accused knobs, rotating plates, and locking members are not cams and do not infringe. If Plaintiffs instead use "cam feature" as a generic placeholder for any component that allegedly controls coupling or uncoupling, then "feature" operates as a nonce term and the limitation is governed by § 112(f), or at least raises a substantial indefiniteness question under § 112(b). Under § 112(f), the limitation is confined to the corresponding disclosed structure—at most, the disclosed lever/cam/cam-path/protrusion arrangement and statutory equivalents. The accused products do not include that structure.

The product analyses confirm this noninfringement position. At least for Groups A&B (Garvee, NEOISM (NEOISM Store), NEOISM (KangYiYuan), REVOTIO, SUPWIN, SYINTAO, FOHERE, VNN, and Wie), the accused rotating plates or knobs do not positively drive, eject, or otherwise control uncoupling of the mixing vessel from the upper housing section. After the accused component is unlocked, there is no **cam-driven positional change** between the container and the upper housing. At most, these structures operate as locking or release components that permit manual removal. Exs.4-11. A structure that merely releases a manually removable vessel is not the claimed cam feature and is not equivalent to a cam feature that controls both coupling and uncoupling. Treating any lock as the claimed cam would vitiate the "cam feature" and "uncoupling" limitations.

Second, the accused products do not satisfy the claimed horizontal first-opening/flexible-seal arrangement. Claim 24 requires that, when the cam feature is in the coupling position, "the first opening of the mixing vessel is positioned to face horizontally and is sealed by the flexible seal." The accused products use a materially different **seal-ring plus evaporator** arrangement. The

sleeve opening is sealed through **cooperation** of a seal ring and the evaporator, not by the claimed flexible seal alone in the claimed cam-coupled configuration. Exs. 4-19. In addition, at least for Groups A&B (Garvee, NEOISM (NEOISM Store), NEOISM (KangYiYuan), REVOTIO, SUPWIN, SYINTAO, FOHERE, VNN, and Wie), the product charts identify inclined or otherwise non-horizontal sleeve-opening geometry in order to accommodate a cone-shaped structure. Exs. 4-11. That inclined geometry is not the claimed first opening positioned to face **horizontally**.

Third, the accused products do not include the claimed "flexible seal arranged proximate to the upper housing section" in the claimed relationship. Plaintiffs cannot satisfy this limitation merely by pointing to an integrated seal ring mounted on the upper housing. The accused seal ring is fixedly disposed on the upper housing section and secured through a snap-fit or comparable structure. It operates with the evaporator and vessel opening in a different sealing arrangement, rather than as the claimed flexible seal sealing a horizontally facing first opening in the claimed cam-coupled configuration. Exs. 4-19. Plaintiffs have not shown literal infringement, and any doctrine-of-equivalents theory would improperly erase the specific sealing relationship added during prosecution.

Fourth, at least the products in Group A (Garvee, NEOISM (NEOISM Store), NEOISM (KangYiYuan), REVOTIO, SUPWIN, and SYINTAO) have an additional noninfringement ground. Claim 24 requires "a second end with a second opening configured to dispense the drink product." These products do not have a dispensing opening on the second-end face. Their outlets are located on the downward-facing outer circumferential sidewall of the container. Exs. 4-8. That is a materially different outlet location and flow path. Treating a sidewall outlet as the claimed "second end with a second opening" would vitiate the "second end" limitation and would improperly capture a different dispensing architecture.

Claim 30 fails for the same reasons and for an additional reason. Claim 30 depends from Claim 24, so any product that does not meet Claim 24 necessarily does not meet Claim 30. Claim 30 also requires a **lever** that moves the cam feature into the coupling position, with the cam

feature engaging at least one mating feature on the mixing vessel to control coupling. The accused knobs, rotating plates, and locking members are not the claimed lever-actuated cam/mating-feature structure. For example, the accused products sold by sellers including CULVANI, FOHERE, VNN, Wie, AllToU, Besococina, use **knobs** to control locking/unlocking, which are not the "lever" required by Claim 30. Exs. 9, 10, 11, 12, 14, 16. Plaintiffs cannot satisfy Claim 30 by relabeling ordinary locking or release components as the claimed lever/cam mechanism.

If Plaintiffs attempt to broaden the claims to capture those accused structures, Claims 24 and 30 are at least subject to substantial invalidity challenges. Defendants' invalidity analysis identifies UGOLINI-896 as disclosing a machine for producing and dispensing ice cream, iced beverages, or granita, including the same basic frozen-drink architecture: a housing or base, an upper vertical wall structure, a tank or mixing vessel, a rear opening, a dispensing outlet, a pour-in opening, a mixer or dasher, a motor, a cooling element or evaporator received into the vessel, and a seal associated with the rear opening and cooling element. Ex. 1, Detailed Invalidity Analysis. The asserted distinction, under Plaintiffs' broad reading, would be only the claimed cam/lever coupling arrangement. But Defendants' invalidity analysis identifies at least SINGH-235, VIRGINIUS-786, KASPRZYCKI-784, and AUDETTE-340 as teaching or suggesting the relevant latch, locking, cam, and lever structures. *Id.* AUDETTE-340 in particular discloses an arm corresponding to a lever, a locking member corresponding to a cam feature, and an engagement member corresponding to a mating feature. *Id.* Combining known frozen-beverage-machine structures with known latch/cam locking structures raises, at minimum, a substantial obviousness question under KSR because it combines familiar elements according to known methods to achieve predictable locking and sealing results. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416–22 (2007).

The same validity problem applies to Claim 30. The additional limitations of Claim 30—lever movement, cam movement into a coupling position, and cam engagement with a mating feature—are taught or suggested by the same prior-art lever/cam locking references

identified in Defendants' invalidity analysis. Ex.1, Detailed Invalidity Analysis. Thus, if Plaintiffs read Claim 30 broadly enough to cover Defendants' knobs, rotating plates, or locking members, that reading sweeps directly into the prior art and raises a substantial obviousness question.

Claims 24 and 30 also face substantial questions under § 112. The invalidity analysis identifies indefiniteness issues concerning "cam feature," the functional requirement that the cam feature "controls" coupling and uncoupling, "proximate to the upper housing section," and "face horizontally." Ex. 1, Detailed Invalidity Analysis. These terms are especially problematic because Plaintiffs appear to rely on elastic, litigation-driven meanings to capture structurally different accused products. Under *Nautilus*, a claim is indefinite if, read in light of the specification and prosecution history, it fails to inform skilled artisans with reasonable certainty about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901, 910–11 (2014).

The asserted claims also raise substantial written-description and enablement questions. Claim 24 broadly recites a "cam feature," but the specification describes a specific lever/cam/cam-path/protrusion arrangement for achieving the alleged coupling and uncoupling effect. Ex. 3, US12593855B2, col. 14; Ex. 1, Detailed Invalidity Analysis. The alleged technical effect depends on specific structures that Claim 24 omits, including the lever/handle and the cam-path/protrusion interaction that actually moves the vessel relative to the upper housing. If Plaintiffs construe Claim 24 broadly enough to cover the accused knobs, rotating plates, and locking members, Claim 24 exceeds the disclosed invention and is vulnerable under § 112(a). If Plaintiffs construe Claim 24 narrowly enough to preserve written-description and enablement support, the accused products do not infringe. Claim 30 inherits these defects because it depends from Claim 24.

Plaintiffs are therefore trapped by their own infringement theory. If "cam feature" is broad enough to cover Defendants' knobs, rotating plates, or locking members, then the same reading sweeps in the known cam/lever/locking structures identified in the prior art and raises a

substantial obviousness question. If "cam feature" is limited to the structure and function Applicant relied on to secure allowance, the accused products do not infringe. If "first opening . . . positioned to face horizontally" and "sealed by the flexible seal" are broad enough to cover Defendants' inclined or otherwise different sleeve openings and seal-ring/evaporator arrangements, then UGOLINI-896 and the related prior art raise substantial validity questions. If those terms are limited to the claimed horizontal opening and flexible-seal relationship added during prosecution, the accused products do not infringe. If the sidewall outlets are treated as the claimed "second end with a second opening," then prior frozen-beverage dispensing outlets render the limitation old or obvious; if "second end" means the end face of the vessel, the Group A products do not meet this limitation.

The same squeeze defeats any doctrine-of-equivalents theory. A hypothetical claim broad enough to cover the accused knobs, rotating plates, sidewall outlets, non-horizontal sleeve openings, integrated seal rings, or seal-ring/evaporator sealing arrangements would also cover, or at least be obvious over, the prior art identified above. The doctrine of equivalents cannot be used to recapture that prior-art territory. *Wilson Sporting Goods*, 904 F.2d at 683–85.

Plaintiffs' evidence does not cure these defects. Their infringement theory rests on visual inspection and conclusory labeling. The Federal Circuit has rejected preliminary injunctions where the accused product does not satisfy a required claim limitation, even if the patentee points to a superficially similar structure. *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555–56 (Fed. Cir. 1995). A product does not infringe merely because a component can be described at a high level as a lock or release. Every limitation must be present. Here, the asserted claims require a cam-controlled coupling/uncoupling arrangement, a horizontally facing first opening sealed by the claimed flexible seal, and, for Claim 30, a lever-actuated cam engaging a mating feature. Plaintiffs have not shown those limitations are likely present.

Accordingly, Plaintiffs cannot show a likelihood of success on Claims 24 or 30. Under a construction consistent with the claim language, prosecution history, and any viable validity

1

position, the accused products do not infringe. Under Plaintiffs' broader infringement theory, Claims 24 and 30 face substantial invalidity challenges under §§ 103 and 112. Either way, the first preliminary-injunction factor defeats Plaintiffs' motion.

## II.   PLAINTIFFS FAILED TO SHOW IRREPARABLE HARM

Plaintiffs have not carried their burden to show irreparable harm. **The asserted claims are not an at-home slush machine generally.** Nor are they the ability to make frozen drinks without ice, fit under a kitchen cabinet, cool quickly, hold a certain capacity, or clean easily. Plaintiffs identify the relevant asserted feature as "a cam feature controlling the coupling of the vessel." ECF No. 11 at 3; ECF No. 58 at 4. That framing is critical. To obtain preliminary injunctive relief, Plaintiffs must show not merely that Yu Defendants compete with them, but that **the alleged irreparable harm is caused by the alleged infringement of the asserted patent claims**. They have not done so.

**A. Plaintiffs Have Not Shown That the Claimed Cam/Lever Vessel-Coupling Feature Drives Consumer Demand.**

The Federal Circuit requires a causal nexus between the alleged infringement and the alleged irreparable harm. "Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2013). The purpose of the causal-nexus requirement is to ensure that an injunction remedies harm caused by infringement, not harm caused by lawful competition. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015). A patentee must show at least "some connection" between the infringing feature and consumer demand. *Id.* at 639–42. Plaintiffs' showing does not meet that standard.

Plaintiffs cite broad product-category harms: loss of market share, price erosion, loss of first-mover advantage, alleged brand dilution, and the upcoming summer sales season. [ECF No. 11 at 2–3, 8–17]. But those alleged injuries are tied to the overall popularity of at-home slush machines—not to the specific claimed cam/lever vessel-coupling feature. Plaintiffs themselves advertise and describe the SLUSHi products by reference to other product attributes: no-ice

1

operation, countertop form factor, fast slush-making, capacity, SlushAssist technology, easy cleaning, dishwasher-safe parts, and general ease of use. Those features are not the asserted inventive concept of Claims 24 and 30.

The Amazon record confirms the absence of causal nexus. Plaintiffs identify at least two SharkNinja products as practicing the '855 Patent: the FS301 and FS605. According to Amazon, the FS301 ranks first in the "Shaved Ice Machines" category, and the FS605 ranks third in the "Commercial Frozen Drink" category. Yet neither product page advertises the alleged patented advantage: easy installation or uninstallation of the mixing vessel through the claimed cam/lever coupling mechanism. The FS605 page even includes a comparison image contrasting the FS605 with "knockoffs" and advertising FS605's asserted technical advantages; that comparison still does not identify easy installation or uninstallation of the mixing vessel as a consumer-facing advantage. *See* Ex. 20, Declaration of Ziqi Yu.

That omission is material. **If the claimed cam/lever vessel-coupling feature were the market-driving advantage Plaintiffs now assert, one would expect Plaintiffs to advertise it prominently**—especially in a comparison image designed to distinguish the FS605 from alleged "knockoffs." Plaintiffs did not. Neither on Amazon (the market where Yu Defendants compete with Plaintiffs) nor on Plaintiff's own sharkninja.com website. *See* Ex. 20, Declaration of Ziqi Yu (screenshot of the relevant webpages). Instead, their marketplace-facing evidence points to other reasons consumers buy the product. Sales allegedly lost for reasons other than the patented feature are not irreparable harm caused by patent infringement. *Apple*, 695 F.3d at 1375.

**B. Plaintiffs' Evidence Shows Demand for Unclaimed Product Attributes, Not Demand for the Claimed Invention.**

Plaintiffs attempt to bridge the causal-nexus gap by relying on generalized consumer comments such as "easy to assemble," "easy to use," "easy to clean," "fits perfectly on my counter," and "the whole thing comes apart and goes back together REALLY easily for easy cleaning." [ECF No. 11 at 6; ECF No. 58 at 6]. That evidence is insufficient. None of those statements refers to the claimed cam feature. None refers to the asserted lever mechanism. None

1

states that consumers purchased the product because the mixing vessel can be installed or uninstalled through a cam/lever coupling mechanism requiring minimal force.

At most, Plaintiffs' evidence shows that consumers like the SLUSHi because it is easy to use, easy to clean, fits on a countertop, and makes slush without ice. That is not enough. The Federal Circuit's causal-nexus requirement prevents a patentee from obtaining an injunction based on demand for unclaimed or prior-art features simply because the product also contains an allegedly patented feature. *See Apple*, 695 F.3d at 1375. "Easy to use" and "easy to clean" are not the same thing as demand for the asserted cam feature controlling vessel coupling. Many unclaimed features can make a frozen-drink maker easy to use or clean: the size and weight of the vessel, the top-fill opening, dishwasher-safe parts, rinse cycles, controls, recipe programs, capacity, or the overall layout of the appliance. The defect is especially clear because Plaintiffs' own allegations repeatedly identify non-patented demand drivers. The Complaint alleges that the SLUSHi "reimagines the classic slush machine" because it permits consumers to make frozen slush drinks "safely and quickly at home without ice." [ECF No. 10 ¶ 23]. It alleges that the SLUSHi can turn liquid into slush "in as little as 15 minutes—with no ice needed." [ECF No. 10 ¶ 24]. It alleges that later SLUSHi XL and Max models include larger capacity vessels, faster cooling, and SlushAssist technology. [ECF No. 10 ¶ 25]. Those are the features Plaintiffs say built the market. They are not the claimed cam/lever vessel-coupling mechanism. Plaintiffs cannot establish the causal nexus by relying on broad consumer praise for the whole product and then attributing that praise to a narrow claimed mechanical feature.

Plaintiffs' attempt to recast category-wide commercial success as irreparable harm from the '855 Patent should be rejected. **The '855 Patent issued on April 7, 2026—less than one month before this case was filed.** Plaintiffs' claimed market success, viral launch, first-mover advantage, and alleged knockoff problem substantially predate issuance of the '855 Patent. Plaintiffs may not use pre-issuance market developments and broad product-category competition to establish irreparable harm from infringement of newly issued claims directed to a narrow mechanical coupling feature.

**C. Plaintiffs' Market-Share and Price-Erosion Allegations Are Speculative and Not Tied to the Claimed Feature.**

Plaintiffs also rely on general allegations of lost sales, lost market share, price erosion, or brand dilution. However, the Federal Circuit has rejected irreparable-harm theories based on speculation and ordinary competitive effects untethered to the patented feature. In *Nutrition 21 v. United States*, the court held that difficulty calculating market-share losses and speculative future harm are insufficient because such allegations would otherwise exist in nearly every patent case. 930 F.2d 867, 871–72 (Fed. Cir. 1991). Plaintiffs' theory here suffers from the same defect. Plaintiffs assert that a "tsunami of knockoffs" is commoditizing the market and that Yu Defendants' products may cause price erosion or lost market share. ECF No. 11 at 2–3, 11–17; ECF No. 58 at 2. But Plaintiffs do not show that any such effects are caused by infringement of Claims 24 or 30, "a cam feature controlling the coupling of the vessel" [ECF No. 11 at 3; ECF No. 58 at 4], as opposed to lawful price competition among frozen-drink makers. Plaintiffs have not shown that consumers chose Yu Defendants' products because of that claimed feature. They have not shown that the accused products' sales would disappear if the alleged cam/lever coupling feature were absent. And they have not separated demand for allegedly patented features from demand for unclaimed features such as price, capacity, cooling speed, countertop size, availability, no-ice operation, and general ease of cleaning.

This omission defeats irreparable harm. The relevant injury is not "competition." The relevant injury is harm caused by infringement of the asserted claims. Plaintiffs have offered no competent evidence that the asserted claims—as opposed to the general frozen-drink-maker market—drive the alleged harm.

**D. Plaintiffs' Foreign-Seller and Prior Injunctions Arguments and Misjoinder Do Not Substitute for Causal Nexus.**

Plaintiffs also argue that Yu Defendants are online sellers, that some sellers may be foreign, and that future damages may be difficult to collect. ECF No. 11 at 14-15; ECF No. 58 at 14-15. Even if accepted, those assertions do not establish irreparable harm caused by the alleged

1

infringement of the '855 Patent. Collectability concerns may be relevant where a plaintiff has first shown likely infringement and a causal connection between the patented feature and the alleged injury. They cannot replace those showings.

Nor can Plaintiffs rely on prior injunctions involving different patents. Plaintiffs acknowledge that this Court previously granted preliminary relief against certain sellers in another case involving "a different patent." ECF No. 11 at 4; ECF No. 58 at 4. That prior proceeding does not establish irreparable harm here. The present Motion concerns a different patent, different asserted claims, a newly issued patent, and a record that must be evaluated claim-by-claim and product-by-product. Patent injunctions do not issue by analogy to prior enforcement actions.

Nor may Plaintiffs cure their lack of causal nexus by aggregating all Yu Defendants into a single "swarm" theory of irreparable harm. Plaintiffs now suggest that common counsel supports an inference of concerted infringement (ECF No. 59 at 2, "SharkNinja submits that the Yu Defendants should be considered together, at least because they are all represented by a common counsel, suggesting that all Yu Defendants' activities are concerted."). That argument should be rejected. Retaining common counsel after being sued is not evidence of common design, common manufacture, common sourcing, common control, or coordinated pre-suit infringement. In patent cases, Congress expressly limited multi-defendant aggregation: accused infringers may not be joined or consolidated for trial based solely on allegations that they each infringe the same patent. 35 U.S.C. § 299(b). Likewise, *In re EMC Corp.* requires an actual link and shared operative facts; product similarity and common legal defenses are not enough. 677 F.3d 1351, 1359-60 (2012). Plaintiffs still have not shown that the asserted claims are likely to survive invalidity challenges, each Yu Defendant's accused product practices the claimed cam feature, that the claimed feature drives demand for that product, or that any alleged irreparable harm is caused by infringement rather than lawful competition.

**E. Plaintiffs' Own Marketplace Success Undercuts Any Claim of Imminent Irreparable Injury.**

Plaintiffs' asserted products remain successful in the marketplace. According to Amazon, the FS301 ranks first in "Shaved Ice Machines," and the FS605 ranks third in "Commercial Frozen Drink." *See* Ex. 20, Declaration of Ziqi Yu. Those rankings are inconsistent with Plaintiffs' assertion that immediate injunctive relief is necessary to prevent irreparable market collapse. Plaintiffs may prefer a market without lower-priced competitors, but the Patent Act does not give them that market unless the competitors practice valid and infringed patent claims.

This is not a case where the evidence shows that the patented feature is the reason consumers purchase the accused products. Nor is it a case where Plaintiffs' advertising demonstrates that the claimed cam/lever vessel-coupling feature is a critical consumer-facing advantage. The opposite is true. Plaintiffs' own product pages emphasize other attributes, and even the FS605 comparison image against "knockoffs" does not mention easy installation or uninstallation of the mixing vessel. That silence defeats Plaintiffs' causal-nexus theory.

In sum, at most, Plaintiffs could show that SharkNinja sells successful frozen-drink makers and faces competition from other sellers. That is not enough. Plaintiffs have not shown that demand for either Plaintiffs' products or Yu Defendants' accused products is driven by the narrow claimed cam feature controlling vessel coupling. Plaintiffs have not shown that any alleged price erosion, loss of market share, or brand dilution is caused by infringement of Claims 24 or 30. And Plaintiffs have not shown that monetary damages would be inadequate for any properly proven post-issuance infringement. The irreparable-harm factor therefore weighs against preliminary injunctive relief. Because irreparable harm is an independent and necessary requirement for preliminary injunctive relief, the Motion should be denied.

## III. THE BALANCE OF EQUITIES FAVORS DEFENDANTS

The Court need not reach the remaining equitable factors because Plaintiffs have failed to establish likelihood of success and irreparable harm. "A trial court may . . . deny a motion based on a patentee's failure to show any one of the four factors—especially either of the first two—without analyzing the others." *Jack Guttman, Inc.*, 302 F.3d at 1356. But even if the Court reaches the balance of equities, that factor favors Defendants.

Plaintiffs seek an injunction that would remove entire frozen-drink-maker products from the market based on alleged infringement of a narrow mechanical feature. Plaintiffs' own Motion identifies the "key feature" of claims 24 and 30 as "a cam feature controlling the coupling of the vessel." ECF No. 58 at 4. The asserted patent is not directed to frozen-drink makers generally, summer beverages generally, countertop appliances generally, no-ice operation, capacity, cooling speed, drink texture, or cleaning generally. It is directed to a particular vessel-coupling arrangement. Yet Plaintiffs ask the Court to stop Defendants from selling whole machines.

That mismatch matters. In *Apple*, the Federal Circuit relied on the narrowness of the requested injunction in finding that the hardship balance favored Apple: "Apple's proposed injunction targets only specific features, not entire products" and included a sunset provision. 809 F.3d at 645–47. This case is the opposite. Plaintiffs do not seek a feature-specific order requiring removal of a proved infringing software function or small replaceable component. **They seek to disable sales of entire appliances during the summer season, when consumer demand for frozen-drink makers is predictably at its highest and when Plaintiffs themselves say the market is commercially important. [ECF No. 58 at 9].**

The equities do not support that relief. Defendants' products are not copies of the asserted patented mechanism. As shown in Defendants' noninfringement analysis, the accused products do not include the claimed "cam feature" that controls both coupling and uncoupling of the vessel. Plaintiffs therefore cannot invoke the usual proposition that an infringer suffers no hardship from being ordered to stop infringing. That principle presupposes likely infringement. Here, Plaintiffs have not shown likely infringement, and Defendants have raised substantial noninfringement and invalidity defenses.

The practical harm to Defendants is concrete and immediate. A marketplace injunction would not merely prevent use of a discrete coupling component. It would remove entire product listings, interrupt sales history, destroy product ranking, impair customer-review accumulation, strand inventory, disrupt advertising campaigns, and cause loss of seasonal sales that cannot be recovered later. For Amazon sellers, forced delisting is not a temporary pause; it can permanently

impair ASIN performance, keyword ranking, advertising efficiency, and customer trust. Plaintiffs' proposed bond does not adequately account for those losses.

By contrast, Plaintiffs' asserted hardship is attenuated. Plaintiffs' own products remain successful in the marketplace. Defendants' Amazon evidence shows that the FS301 ranked first in the "Shaved Ice Machines" category and the FS605 ranked third in the "Commercial Frozen Drink" category. Plaintiffs also do not advertise the alleged patented advantage—easy installation or uninstallation of the mixing vessel using a cam/lever mechanism—as a material consumer-facing feature. Even the FS605 comparison image distinguishing the product from alleged "knockoffs" does not identify easy installation or uninstallation of the vessel as an advantage. That evidence undercuts Plaintiffs' claim that the asserted feature is the source of any equitable hardship.

Plaintiffs' reliance on prior injunctions involving other patents does not alter the analysis. Plaintiffs admit those orders involved "a different patent." [ECF No. 58 at 4]. This motion must rise or fall on the '855 Patent, the asserted claims, and the accused products here. A prior injunction concerning a different patent cannot establish that the balance of hardships favors enjoining entire machines based on a newly issued, untested patent directed to a narrow vessel-coupling feature.

The balance of equities therefore favors maintaining the status quo pending claim construction and discovery. If Plaintiffs ultimately prove infringement and validity, monetary damages remain available. But if Defendants are wrongly enjoined now, the harm from removal of entire seasonal products from online marketplaces cannot be fully repaired.

## IV. THE PUBLIC INTEREST DISFAVORS PLAINTIFFS' OVERBROAD INJUNCTION

The public interest also favors denial. The public has an interest in enforcing valid patent rights, but it has an equally important interest in preventing patentees from extending a narrow patent beyond its lawful scope. The Supreme Court has warned that where "the patented invention is but a small component of the product" and an injunction is used for "undue leverage," legal damages may be sufficient and "an injunction may not serve the public interest." *eBay*, 547

1

U.S. at 396–97 (Kennedy, J., concurring). That warning applies here.

Plaintiffs seek to use a patent directed to a small mechanical vessel-coupling feature to exclude entire frozen-drink-maker machines from the market. That is not a narrow protection of the claimed invention. It is an attempt to obtain market-wide relief over a product category. The public interest does not favor removing noninfringing alternatives from the market, particularly where the accused products do not practice the claimed cam feature and the asserted claims face substantial invalidity challenges under §§ 103 and 112. Defendants' invalidity analysis shows that the asserted claims are vulnerable in view of UGOLINI-896 combined with prior art teaching lever/cam or over-center coupling mechanisms, including AUDETTE-340, VIRGINIUS-786, KASPRZYCKI-784, and SINGH-235. The public has no interest in the preliminary enforcement of claims likely invalid or extended beyond their proper scope.

The Supreme Court has long recognized the "strong federal policy favoring free competition in ideas which do not merit patent protection." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 168 (1989) (quoting *Lear, Inc. v. Adkins*, 395 U.S. 653, 656 (1969)). The patent system reflects a balance: valid patents encourage invention, but invalid or overextended patents suppress lawful competition. *See Bonito Boats,* 489 U.S. at 146 ("[I]mitation and refinement through imitation are both necessary to invention itself and the very lifeblood of a competitive economy."). Enjoining Defendants here would upset that balance by preventing consumers from purchasing entire frozen-drink-maker products based on an alleged feature Plaintiffs do not even advertise as a meaningful consumer advantage.

Plaintiffs argue that the public interest favors stopping "cheap knockoffs." But that argument assumes the answer to the merits question. The cases Plaintiffs cite, including *Douglas Dynamics*, concern enforcement against products **found to use** patented inventions. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013). Here, Defendants have shown that their products do not include the claimed cam-controlled coupling and uncoupling structure. The public interest does not favor branding lawful competing products as "knockoffs" and removing them from the market before Plaintiffs prove infringement and validity.

1

Nor is this a consumer-confusion case. Plaintiffs assert a utility-patent claim, not a trademark or trade-dress claim. If Plaintiffs had evidence that a particular seller falsely claimed affiliation with SharkNinja or misused SharkNinja marks, a narrowly tailored order addressing that misconduct would be different. But a patent injunction banning whole appliances is not justified by generalized rhetoric about consumer confusion.

The requested injunction would reduce consumer choice and remove competing frozen-drink-maker products from the market during the very season when consumers are most likely to want them. The public interest is better served by allowing lawful competition to continue while the Court resolves the disputed issues of claim construction, infringement, and validity. Because Plaintiffs seek an overbroad injunction based on a narrow, unproven, and likely invalid patent claim, the public interest weighs against preliminary relief.

**V. CONCLUSION**

For the foregoing reasons, Yu Defendants respectfully request that the Court DENY Plaintiffs' Motion for Preliminary Injunction as to Yu Defendants, and grant such other and further relief as the Court deems just and proper.

Dated: June 12, 2026

/s/Ziqi Yu
Ziqi Yu
Fla Bar ID #1044119
procollider@pm.me
5794 Bird Rd Unit 554
Miami, FL 33155
415-519-5274
Chengchen Xu (*pro hac vice*)
NY Attorney Registration # 6277362
john@deltaiplaw.com
Delta IP Law PLLC
20 F Street NW, Suite 700, Washington, DC 20001,
858-280- 5570

*Counsel for Defendants("Yu Defendants")*
*Garvee, REVOTIO, SUPWIN,SYINTAO, CULVANI,*

2

*FOHERE, VNN, WIE, Astralship, Nutrichef, Crownful, ontravelo, AllToU, Besococina, Velpax, NEOISM (NEOISM store), NEOISM (KangYiYuan)*

2